[S.F. No. 24094. Dec. 22, 1980.]

ROBERT F. WEBB, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
DI GIORGIO CORPORATION, Respondents.

622

**COUNSEL**

Leep, Saunders, Costello & Asbill, Ben Leep and Henry Saunders for Petitioner.

William B. Donohoe, Richard W. Younkin, Dexter W. Young, Twohy, Darneille & Frye, Twohy & Brown and Erik Frye for Respondents.

## OPINION

**MOSK, J.**—As amended in 1974, Labor Code section 139.5 establishes in qualified injured workers a right to vocational rehabilitation services and benefits, and a correlative duty in the Rehabilitation Bureau of the Division of Industrial Accidents (bureau) to expedite and facilitate provision of the same.[1] In this case we consider for the first time the single issue: the proper commencement date for the payment of such benefits.

We begin with a brief chronological outline of the undisputed facts. On January 31, 1975, employee Webb slipped from a forklift he was operating for employer Di Giorgio Corporation and contused his lower back, causing debilitating pain. Temporary disability benefits were paid by employer until August 24, 1975, when permanent disability benefits were begun on the basis of a medical report stressing the unlikelihood of a return to work. The Workers' Compensation Appeals Board (board) later ordered temporary disability benefits paid until December 15, 1975, the date a medical report first used the terms "permanent and stationary" to describe employee's condition.

---

[1]Section 139.5 provides in relevant part: "(a) The Administrative Director shall establish within the Division of Industrial Accidents a rehabilitation unit, which shall include appropriate professional staff, and which shall have all of the following duties:

"(1) To foster, review, and approve rehabilitation plans developed by a qualified rehabilitation representative of the employer, insurance carrier, state agency, or employee.

"(2) To adopt rules and regulations which would expedite and facilitate the identification, notification, and referral of industrially injured employees to rehabilitation services.

"(3) To coordinate and enforce the implementation of rehabilitation plans.

". . . . . . . . . . . . . . . .

"(c) When a qualified injured workman chooses to enroll in a rehabilitation program, he shall continue to receive temporary disability indemnity payments, plus additional living expenses necessitated by the rehabilitation program, together with all reasonable and necessary vocational training, at the expense of the employer or the insurance carrier, as the case may be."

Unless otherwise noted all statutory references herein are to the Labor Code, and all references to "regulation section" are to the regulations adopted by the Administrative Director of the Division of Industrial Accidents (director) and published in title 8 of the California Administrative Code.

On January 20, 1976, employee submitted to the Permanent Disability Rating Bureau of the Division of Industrial Accidents a request for informal permanent disability rating (see § 124), stating that in his opinion his right leg and back "just wouldn't take the work as a lift truck driver because of all of the climbing." Not until June 9, 1976, however, did employee formally request employer to furnish rehabilitation. On that day, employer resumed paying temporary benefits pursuant to section 139.5,[2] and also developed a vocational rehabilitation plan for employee as a motel manager. The bureau approved the plan and declared that "employer will pay all temporary disability at the rate of $119 per week from the date of injury to the date Mr. Webb begins work at Roberts Motel...." Upon completion of the rehabilitation program employee was hired as a motel manager on October 8, 1976. Employer paid full rehabilitation benefits from June 9, 1976, to the latter date, but refused to do so for the period from December 15, 1975, to June 9, 1976.

Employee filed a claim for the disputed payments. The workers' compensation judge found in his favor and ordered employer to pay the missing six months of temporary rehabilitation benefits. Employer petitioned for reconsideration, contending that the proper date for commencement of the payment of temporary rehabilitation benefits is the date an injured employee requests vocational services.

The board granted the petition and sustained employer's contention. It held that employer's position was consistent with *Ponce De Leon v. Glaser Brothers* (1977) 42 Cal.Comp.Cases 962, the only California opinion construing the starting point for rehabilitation benefits under section 139.5. In *Ponce De Leon,* the board ruled that if the employee's request for rehabilitation comes after his temporary disability payments have ceased, it is necessary to ask the reason for the unusual delay. "If it was because the applicant [i.e., employee] was not interested in vocational rehabilitation at the time he became medically permanent and stationary, he will have to reopen this issue and temporary disability may be reinstated if [he was] otherwise eligible from the time he manifested this interest and communicated it to the defendants [i.e.,

---

[2]The Legislature did not in fact create a new type of benefit in section 139.5, but merely authorized the continuation of temporary disability indemnity during rehabilitation. Nevertheless, for clarity we distinguish the source of the payments' authorization, although we find unwieldy the director's term, "rehabilitation temporary disability indemnity." (Reg. § 10003, subd. (i).) For convenience, we will hereafter refer to them simply as "temporary rehabilitation benefits."

employers]. On the other hand if it was because of delays or misdiagnosis of the need for vocational rehabilitation benefits by the defendants then no interruption of temporary disability benefits may be in order." (*Id.* at pp. 968-969.)

Purporting to apply *Ponce De Leon*, the board fixed the proper date for commencement of temporary rehabilitation benefits as June 9, 1976, when employee "communicated to the employer his election to undertake the rehabilitation program." One board member—the author of *Ponce De Leon*—dissented, urging that employer had notice of employee's need for rehabilitation long before employee requested it, and that to permit a delay in the furnishing of benefits after such notice frustrates an employer's primary duty to provide rehabilitation to the injured worker.

Employee seeks a writ of review, contending that the board's decision misconstrues *Ponce De Leon*. ■ We agree, and hold that if an employer knows an employee is potentially in need of rehabilitation but fails either to fully inform him of his right thereto or to notify the bureau, the employee's delay in requesting rehabilitation is excused, and temporary rehabilitation benefits are payable from the time the employer knows of the potential need. Accordingly, the board's decision must be annulled and the case remanded for further proceedings.

■ In resolving this question of statutory interpretation, of course, our primary goal is to give effect to the purpose of section 139.5, seen in the context of the workers' compensation scheme as a whole. (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 229-231 [110 Cal.Rptr. 144, 514 P.2d 1224].) Moreover, this court has repeatedly recognized that a rule of liberal construction applies to all aspects of workers' compensation law. (*Kerley v. Workmen's Comp. Appeals Bd.* (1971) 4 Cal.3d 223, 227 [93 Cal.Rptr. 192, 481 P.2d 200]; *Judson Steel Corp. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668 [150 Cal.Rptr. 250, 586 P.2d 564].) Though we have noted that section 3202, a statute requiring a rule of liberal construction for divisions 4 and 5 of the Labor Code, is not applicable to section 139.5 because it appears in division 1 (*Moyer*, 10 Cal.3d at p. 230, fn. 6), we reaffirmed in the same case that "[t]he underlying policy of [the workers' compensation statutes and their constitutional foundation in California Constitution, article XX, section 21] as well as the recurrent theme of countless appellate decisions on the matter has been one of a pervasive and abiding solicitude for the workman." (*Id.* at p. 233.) And we con-

cluded (at pp. 235-236) that "although we are not impelled by legislative mandate to liberally construe section 139.5 (see fn. 6, *ante*), the interpretation . . . we have adopted not only makes good sense in the context of the workmen's compensation laws but also promotes their constitutionally declared objectives." In these circumstances *Moyer* supports rather than precludes our conclusion that section 139.5 is subject to the judicial rule of liberal construction cited above.[3]

With these principles in mind we address the meaning of section 139.5 in the present context. Unfortunately, the Legislature has left us with little specific guidance for applying the statute to cases of this kind. As the board observed in *Ponce De Leon, supra*, 42 Cal.Comp. Cases 962, 968: "The legislature spoke in terms of the applicant 'continuing to receive' temporary disability benefits. They were obviously contemplating the ideal situation where the worker is identified as being in need of vocational rehabilitation while still medically temporarily disabled and that immediate steps would be taken to initiate the process of vocational rehabilitation. They did not create a new type of temporary disability benefit. They spoke of those benefits continuing. It seems clear that they intended a worker's disability should not be permanent and stationary until he was both vocationally and medically rehabilitated.

"However, the ideal situation above referred to will not always occur. For any number of reasons vocational rehabilitation procedures may not start before the applicant has been medically rehabilitated and has become stationary from a purely medical standpoint." Despite the gap in the statute's explicit coverage, however, the perceptible policies underlying section 139.5 point to its proper construction in this setting.

The history of the statute helps illustrate its present purposes. The original version of section 139.5 (see *Moyer*, 10 Cal.3d at pp. 225-226, fn. 1) was a weak and tentative precursor of the present provision. Participation of employers was wholly voluntary, their financial responsibility was limited, and employees who opted for rehabilitation were

---

[3]There is no basis for inferring that placement of section 139.5 in division 1 is an indication of legislative intent to deprive it of the liberal construction afforded similar provisions in division 4. Section 139.5 was apparently placed in division 1 because it authorized the creation of a subdivision of the Division of Industrial Accidents, the structure of which is set forth in division 1. Nothing in the legislative history of the statute indicates any desire to impose a restrictive rule on its interpretation. (See *State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd.* (1979) 88 Cal.App.3d 43, 55-56 [152 Cal.Rptr. 153].)

subject to postrehabilitation reevaluation for permanent disability entitlements. (*Moyer*, at p. 234; *State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd., supra*, 88 Cal.App.3d at p. 50.) ▮ The amended version, effective January 1, 1975, eliminated these features and created in the employee a right to rehabilitation and a right to continued payment of temporary disability benefits from the moment of his choice to undergo rehabilitation.

The Legislature granted those additional benefits for at least two reasons. The first was to encourage employees to enroll in rehabilitation training by maintaining financial support to help defray their expenses while they participate in such programs. (See Rep. of Workmen's Comp. Study Com. (Apr. 1965) ch. IX, Rehabilitation, pp. 223-224.) The second, equally clear, was to place on employers the primary duty of promptly making rehabilitation available in order to enable injured employees to reenter the work force as soon as practicable.

The statute itself (fn. 1, *ante*) stands as evidence of the latter policy. It clearly allows temporary rehabilitation benefits to accrue before rehabilitation training actually begins, by declaring them payable when the employee "chooses to enroll." (§ 139.5, subd. (c).) That the distinction between enrollment and choosing to enroll was intentional is made even clearer by the fact that the original version of the statute conditioned receipt of temporary rehabilitation benefits on the actual "undertaking" of a rehabilitation program by the employee. (Stats. 1965, ch. 1513, § 44.5, p. 3566.) If the Legislature's only concern was to offset the employee's increased costs on enrollment, that amendment would have been unnecessary. Rather, the change implements the legislative intent to stimulate employers to act promptly in making rehabilitation programs available: the longer implementation takes, the greater the amount of temporary rehabilitation benefits the employer must pay.

The Labor Code further implies an intent to place on the employer the primary responsibility for promptly making rehabilitation available by empowering the bureau and the director to require the employer to provide information both to the employee and to relevant administrative bodies regarding eligibility for rehabilitation benefits. (§§ 138.3, 139.5, subd. (a).)

Imposing the primary responsibility on the employer was also a key recommendation of the Report of the Governor's Task Force on Work-

men's Compensation (July 1973), issued one year before section 139.5 was amended. It adopted almost verbatim the recommendation of the National Commission on State Workmen's Compensation Laws (July 31, 1972) in advising that the rehabilitation unit should "have specific responsibility of assuring that every injured employee who could benefit from vocational rehabilitation services *be offered those services by the employer,...*" (Italics added.) Six months after section 139.5 was amended, the State Workers' Compensation Advisory Committee observed that California fully complied with the National Commission's recommendation, citing section 139.5. (State Workers' Comp. Advisory Com., Final Rep. (July 1, 1975) p. 89.) It further observed that "The primary responsibility to initiate a vocational rehabilitation program is that of the employer. For vocational rehabilitation to be successful employers must assume this responsibility and initiate rehabilitation programs early." (*Id.* at p. 23.)

The director's regulations implementing section 139.5 are replete with references to the need for promptly initiated rehabilitation and the employer's duty to provide it. For instance, the regulation entitled "Initiation of Vocational Rehabilitation Services" declares that "The employer shall have the primary responsibility to provide *timely* vocational rehabilitation services...." (Italics added; Reg. § 10005.) "Suitable Gainful Employment" is defined in part as "that employment ...which offers an opportunity to restore the employee *as soon as practicable*...to maximum self-support...." (Italics added; Reg. § 10003, subd. (h).) The employer is required to report the employee's status to the bureau "(1) *Immediately* upon knowledge that the employee is unlikely to be able to return to his or her usual and customary occupation...on a permanent basis; [¶] or (2) *Immediately* following 180 days after the date of injury when the employee is still unable to return to work...." (Italics added; Reg. § 10004, subd. (a).) This duty is imposed "to ensure that rehabilitation begins early in an employee's treatment...." (1A Hanna, Cal. Law of Employee Injuries and Workmen's Comp. (2d ed. 1980) § 19.01[3], p. 19-7.) Finally, rehabilitation plans are to be implemented "*as soon as* the qualified injured worker is capable of participating in the program and medical opinion indicates his or her recovery will not be impeded by participation." (Italics added; Reg. § 10006, subd. (c).)

The foregoing provisions demonstrate the profound significance that legislators and administrators have attached to the need to make employers responsible for speedy initiation of rehabilitation programs. It

would be inconsistent with this background to conclude that employers have no duty to offer rehabilitation services until their employees actually request such services. Although the statute requires the employee to "choose" rehabilitation before he is entitled to temporary rehabilitation benefits, he cannot be said to have chosen knowingly to forego rehabilitation when he may have been unaware of the availability or content of the rehabilitation alternative. Because the original statute "contained no provisions for notifying employees of the availability of vocational rehabilitation services, many injured workers were ignorant of the opportunity for rehabilitation." (*State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd., supra*, 88 Cal.App.3d at p. 50.) The amended version was intended to insure each qualified injured worker the opportunity to undergo rehabilitation; the Legislature could not realistically have expected the scheme to succeed unless it contemplated that employers would be required to make that opportunity known to and understood by potentially eligible employees.

■ We therefore find a duty in the employer, arising simultaneously with his obligation to report to the bureau under regulation section 10004, subdivision (a),[4] to notify the injured employee of his potential right to rehabilitation and explain how he may apply for a rehabilitation program.[5] The employer should also advise the employee that no claims of the employee will be prejudiced if he immediately contacts the employer, the employer's insurance carrier, or the bureau about rehabilitation.[6] Failure to discharge this duty excuses the employee's failure

---

[4]Subdivision (a) provides: "The employer shall report disability status to the Bureau, on forms prescribed for that purpose:

"(1) Immediately upon knowledge that the employee is unlikely to be able to return to his or her usual and customary occupation, or to his or her occupation at the time of injury, on a permanent basis; or

"(2) Immediately following 180 days after the date of injury when the employee is still unable to return to work for cases not previously reported under (1) above."

[5]We recognize that this rule might require notice to employees who are not ultimately found to be qualified injured workers entitled to rehabilitation. To be entitled, the employee must not only be unlikely to be able to return to his former occupation, but also "reasonably be expected to return to suitable gainful employment through the provision of vocational rehabilitation services." (Reg. § 10003, subd. (c)(2).) All we now decide is the most appropriate point at which to impose the employer's duty to inform the employee of his rights. An injured employee should not be required to await a determination that he is unquestionably eligible before his right to be notified of the availability of rehabilitation arises. His likely inability to return to his previous job amply demonstrates his need to know about and carefully consider his rehabilitation option.

[6]This formulation of the duty is adopted with some variation from the Final Report

to "choose" rehabilitation, and justifies the imposition of an obligation to pay temporary rehabilitation benefits from the date the employer breaches his duty.[7]

of the State Workers' Compensation Advisory Committee, *op. cit. supra*, page 23.

Employers are already required, within five days after receiving knowledge of an injury, to inform the employee of the benefits to which he may be entitled, including "vocational rehabilitation where appropriate." (Reg. § 9880.) But this information comes at a time when the recently injured employee may be unable to attend to it, and it details the whole array of rights and benefits to which he may or may not be entitled. Even if the employee reads and fully understands the description of his rehabilitation rights, he may be ignorant of the point at which he will actually become eligible. Furthermore, many months may pass between the time the employer learns of the injury and the time it is determined the employee will be unable to resume his former occupation. We conclude that compliance with regulation section 9880 does not alone satisfy the employer's primary duty to initiate rehabilitation.

[7]After this case arose, the director promulgated the following regulation: "10016. Rehabilitation Temporary Disability Indemnity Payment.

"(a)   An injured employee's entitlement to rehabilitation temporary disability indemnity payments shall commence on the day the employer knew, or with reasonable diligence should have known, of the employee's inability or likely inability to return to his or her usual and customary occupation or to the position he or she was engaged in at the time of injury. Such payments shall continue during the pendency of vocational rehabilitation services unless the Rehabilitation Bureau otherwise orders.

"(b)   In determining the period for which employee is entitled to receive the rehabilitation temporary disability indemnity payment, the Bureau may consider the following factors:

"(1)   The date on which the employer first obtained knowledge of the possible need for rehabilitation services.

"(2)   Whether the employer has complied with Article 8.5 of the rules of the administrative director requiring the employer to advise the employee about entitlement to benefits [i.e., Reg. § 9880, fn. 6, *ante*].

"(3)   Whether the employer has complied with the reporting requirements of Section 10004 [see fn. 4, *ante*].

"(4)   Whether the employee has requested vocational rehabilitation services.

"(5)   Whether the employee has been cooperative, or available for vocational rehabilitation services.

"(6)   Whether the employee is likely to benefit from the provision of vocational rehabilitation services."

The imprecise language of the regulation leaves us uncertain whether it is consistent with the disposition recommended herein. Subdivision (a) seems to adopt a broader standard, unequivocally entitling the employee to temporary rehabilitation benefits as soon as the employer is aware of the employee's inability to return to work. But subdivision (b) then appears to contradict it by requiring additional factors, including notification of the employee and of the bureau, to be considered in determining when the right to rehabilitation benefits arises. It also appears to be inconsistent with a previously issued regulation: it seems to condition the employee's entitlement solely on employer's notice of his disabled condition, while section 10003, subdivision (c)(2), also requires that the employee be reasonably expected to benefit from rehabilitation services. The latter criterion is found in section 10016 only as one of the six factors to be considered, not as a necessary element of eligibility.

We can only hope that our decision in this case will provide more guidance to the director than his regulation has furnished us.

Employee also raises the question whether employer's failure to notify the bureau in accordance with existing regulations (Reg. § 10004) triggers liability for temporary rehabilitation benefits. We hold that it does. As previously noted, the purpose of the reporting requirement is to aid the process of securing early rehabilitation treatment. Since compliance with that requirement can result in independent bureau action to inform the employee or encourage him to enroll in a rehabilitation program (see Reg. § 10007; see also § 139.6), failure to comply can delay the employee's exercise of his rights.[8]

The rule we adopt is supported by our construction of section 139.5, before its 1974 amendment, in *Moyer.* At that time the statute provided that acceptance of a rehabilitation program by the employee "shall be voluntary." In *Moyer* the employer did not inform the injured employee that if he accepted rehabilitation his permanent disability rating would be lower because it would be based on his condition after rather than before rehabilitation. Even though the statute nowhere explicitly imposed on the employer a duty to so inform the employee, we held the latter's acceptance of rehabilitation is not "voluntary" within the meaning of section 139.5 unless he is given that advice. Relying on the larger public goals of this legislation, we reasoned: "an interpretation of 'voluntary' to mean not only a *willing* acceptance but an *intelligent* one is more promotive of the purpose of the section and of the compensation laws in general since it is more promotive of the welfare of the injured workman." (Italics in original; 10 Cal.3d at p. 234.)

Similarly, the latter purpose is best promoted by construing the present version of the statute to insure that when an employee "chooses" to accept or reject rehabilitation he does so not only voluntarily but intelligently, i.e., after being notified by the employer of the availability and content of the rehabilitation alternative. Although the statute does not specifically require that we impose liability for temporary rehabilitation benefits before the employee has actually chosen to enroll, we should do so where employee's failure to enroll may be attributable to employer's failure to inform. As we said in *Moyer,* "We do

[8]Beyond these two duties the director and bureau may find additional obligations implicit in the statute, and have broad powers to define and enforce those obligations. We hold only that when an employer fails to inform an employee or the bureau under the conditions discussed above, he breaches his duty and is liable for temporary rehabilitation benefits from the moment of the breach. Fulfillment of the duties described above should not insulate the employer from liability for other actions found to unjustifiably delay rehabilitation, or for breach of other duties the statute is found to require or imply.

not see how the injured workman can intelligently decide whether or not to participate in a rehabilitation program unless he is aware of the consequences of that decision." (*Id.* at p. 234.)

The duty in this case is even more clearly mandated than in *Moyer*. There the employer's duty to warn of the disadvantages of rehabilitation ran contrary to the overriding policy of encouraging employees to enroll in rehabilitation programs.[9] Here the imposition of the duty to fully inform the employee is central to any realistic hope that the overriding policy will be effectuated. Furthermore the proposed rule does not encounter the Newtonian action-reaction phenomenon the *Moyer* court recognized as a normal feature of the incentive system, i.e., that an incentive for the employer to initiate rehabilitation often creates an equal and opposite disincentive for the injured employee to participate. (*Id.* at p. 235, quoting 2 Larson, Workmen's Compensation Law (1970 ed.) § 61.20, p. 88-265.) The threat of liability for failure to fully inform will encourage employers to enlighten apparently eligible employees and consequently will increase the likelihood that those employees will know their rights and exercise them.

The employee herein would have us go beyond this construction and hold that temporary rehabilitation benefits are payable from the moment an employer knows or has reason to know that his employee is unlikely to return to his previous job, regardless of the employer's actions upon receipt of the information. The proposal is unpersuasive for several reasons.

First, it makes the exercise of the employee's choice irrelevant in determining the point from which payments should continue. But subdivision (c) of section 139.5 says, "When a qualified injured workman chooses to enroll…he shall continue to receive…payments." Since we must interpret statutes "'according to the usual, ordinary import of the language employed in framing them'" (*Moyer*, 10 Cal.3d at p. 230), such an interpretation is at odds with the section. In contrast, the rule we adopt leaves the moment of choice as the ordinary starting point for payment of temporary rehabilitation benefits; it imposes liability from an earlier date only when the employee has been deprived of an informed choice, making impossible a determination of when that choice

---

[9]To be sure, *Moyer* arose before the statute was amended to require employers to provide rehabilitation. Nevertheless, the *Moyer* court recognized that even the original statute encouraged enrollment by implying adverse consequences for refusal to enroll. (*Id.* at p. 231, fn. 7.)

would otherwise have occurred. Second, petitioner's interpretation would force employers who fulfill their duties in good faith to make payments for the period of delay even though they can demonstrate the delay was in no sense attributable to them. Such a rule would draw no distinction between the employer with an employee anxious to undergo rehabilitation and one whose employee inexplicably sits on his rights after being fully informed of them. Third, it would be less effective than the rule we declare in encouraging employees to choose rehabilitation, since delay would be more likely if temporary rehabilitation benefits were sure to accumulate regardless of the employer's actions.

Because the duties of the employer herein under section 139.5 were unclear to both parties, no evidence was offered to show compliance or noncompliance. To insure proper disposition on remand, we determine which party must bear the burden of proof on the issue.

We must keep in mind that employee Webb's predicament—i.e., that his right to temporary disability payments terminated before he requested rehabilitation—is unusual and is to be avoided whenever possible, since the Legislature envisioned vocational rehabilitation as a service to be provided before disability becomes stationary. (*Ponce De Leon* v. *Glaser Brothers, supra*, 42 Cal.Comp.Cases at p. 968.) Where the ordinary circumstance the Legislature contemplated has somehow failed to occur, it must be determined who was responsible for causing the delay. (*Id.* at pp. 968-969.) ▆▆ Inasmuch as (1) the responsibility of promptly initiating rehabilitation is primarily on the employer, (2) the employer should easily be able to produce evidence of compliance if proper notices have been given to the bureau and the employee, and (3) under the amended statute eligible employees can ordinarily be expected to request rehabilitation if it is fully explained to them, we conclude that it is appropriate to require the employer to bear the burden of proof that he fulfilled his duty.

The decision of the board is annulled and the case is remanded for further proceedings consistent herewith.

Bird, C. J., Tobriner, J., Clark, J., Richardson, J., Manuel, J., and Newman, J., concurred.

The petition of respondent Di Giorgio Corporation for a rehearing was denied February 5, 1981. Newman, J., was of the opinion that the petition should be granted.