[No. F003246. Fifth Dist. May 21, 1984.]

CAROL J. BABCOCK-BUCKLIN, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
EDITH KIRK et al., Respondents.

## COUNSEL

Froba, Frailing & Rockwell and David N. Rockwell for Petitioner.

Richard A. Krimen, Michael J. Brodie, Arthur Hershenson, Fernando Da Silva, Jeffrey A. Rosen and Gary J. Lee for Respondents.

**O**PINION

**ANDREEN, J.**—Petitioner Carol J. Babcock-Bucklin (Babcock) seeks review of a decision of the Workers' Compensation Appeals Board (Board), which granted reconsideration in favor of her employer, Edith Kirk, and the employer's insurer, State Compensation Insurance Fund (SCIF). The issue before us is what information must be available to an employer in order to trigger an obligation to inform the employee of the availability of rehabilitation benefits.

F<span style="font-variant:small-caps">ACTS</span>

The only matter in dispute is whether temporary rehabilitation benefits[1] were due Babcock between the time she stopped work and the actual commencement of rehabilitation efforts approximately one year and four months later. All other issues were settled by a compromise and release which was approved by the workers' compensation judge.

Babcock was employed as a hair stylist. After a time she began to suffer contact dermatitis of the hands, which became so severe she was forced to terminate her employment on November 8, 1979. The contact dermatitis was caused by exposure to various chemicals used in the beautician business.

Babcock testified that she complained to Edith Kirk that they should change the brand of shampoo, because it was "too rough." She also complained to Gerry Bradley and Sheila Billeau, comanagers. The employer changed the brand of shampoo; Babcock subsequently commenced furnishing and using her own. The condition worsened. On the last day of work, she informed comanager Billeau that her hands were so bad she could not work. Babcock believes that she told Billeau that she had to see a doctor. She began to receive disability benefits from the Employment Development Department, which informed her that the condition was industrial and that she should seek workers' compensation. She talked to Kirk about this, who offered to have her accountant husband prepare an application. He did not, so she filed one in propria persona, three months after work stoppage, on February 8, 1980.

The defendants, Kirk and SCIF, produced the testimony of comanager Bradley that on her last day of work, Babcock said that she was going to a doctor for her hands, but that she did not indicate that the hand condition was industrially caused.

---

[1] See *Webb* v. *Workers' Comp. Appeals Bd.* (1980) 28 Cal.3d 621 [170 Cal.Rptr. 32, 620 P.2d 618].

The employer does not contend that she notified Babcock of a right to rehabilitation benefits.

SCIF obtained a medical report from Dr. Asch, dated March 23, 1981, stating that Babcock should "be considered permanently disabled in respect to returning to beauty shop work." He noted that "[c]ontact dermatitis is quite common in beauticians. This occurs on both a primary irritant basis and allergic type sensitization to the numerous beauty agents handled in the course of their work. It is noteworthy that Ms. Babcock points particularly to the shampoo as irritating her skin. Most shampoos contain formaldehyde and formaldehyde sensitization is not at all uncommon."

On January 27, 1982, the Rehabilitation Bureau of the Division of Industrial Accidents issued a decision finding that the applicant was not capable of returning to her usual or customary occupation, and SCIF was ordered to provide vocational rehabilitation/diagnostic services, including temporary disability indemnity on a continuing basis beginning on March 23, 1981, the date when the employer knew, or should have known, of the applicant's need for vocational rehabilitation by virtue of the report of Dr. Asch.

The workers' compensation judge issued his findings and award that Babcock was a qualified injured worker entitled to rehabilitation benefits for the period November 9, 1979, through March 9, 1981. In the judge's report on decision, he noted that Babcock experienced difficulties with her hands as the result of exposure to materials in the course of her employment, that she informed the employer that she was going to see a doctor for them at the time she left work, and that she talked to the employer about compensation benefits before filing her application for adjudication of her claim. He further noted that the employer did not give notice to Babcock of vocational rehabilitation benefits to which she may have been entitled. He therefore ordered temporary disability benefits to be paid from the time she left work until benefits were furnished pursuant to the order of the Rehabilitation Bureau, a period of one year, four months.

On the employer's and employee's petitions for reconsideration, the order for temporary disability indemnity was rescinded because, although Babcock informed the employer that she was unable to work because of her hand condition, there was no evidence that the employer knew that the condition was industrial until the report of Dr. Asch was received. Therefore there was no duty to report under title 8, California Administrative Code, section 10004, subdivision (a).

The Board erred when it rescinded the workers' compensation judge's award on the ground that the employer was not apprised that Bab-

cock's hand condition was industrially caused. The employer knew that the contact dermatitis was on her hands, not all over her body, that a cosmetologist's hands are constantly in chemicals used in the business, that shampoos were changed twice in an attempt to alleviate the condition, and that the condition had progressed to the point that work termination and medical intervention were necessary. There was no evidence in contradiction. On that state of the record, the employer could make no reasonable inference other than it is probable that the condition was industrial. (See *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432].)

### EXTENT OF EMPLOYER'S KNOWLEDGE AS TRIGGERING DUTY TO INFORM EMPLOYEE OF HER RIGHT TO TEMPORARY REHABILITATION BENEFITS

In *Webb* v. *Workers' Comp. Appeals Bd., supra,* 28 Cal.3d 621, our high court discussed the starting point for rehabilitation benefits. Webb had received temporary compensation benefits for about a year. One-half year after that, he formally requested rehabilitation. The Workers' Compensation Appeals Board granted reconsideration to the employer following an order by the workers' compensation judge for temporary rehabilitation benefits for the one-half year period. The Board held that benefits were not payable until the employee had communicated his election for rehabilitation to the employer. The decision of the Board was annulled. ■ The California Supreme Court held "that if an employer knows an employee is potentially in need of rehabilitation but fails either to fully inform him of his rights thereto or to notify the bureau [Bureau of Rehabilitation], the employee's delay in requesting rehabilitation is excused, and temporary rehabilitation benefits are payable from the time the employer knows of the potential need." (*Id.,* at p. 626.) The decision was based, in part, on a legislative policy to place on employers the primary duty of promptly making rehabilitation available in order to facilitate reemployment.

■ The *Webb* court held that the employer has the duty, arising simultaneously with his obligation to report to the Bureau of Rehabilitation,[2] to

---

[2]California Administrative Code, title 8, section 10004 provides in part: "(a) All reports required by this section shall be submitted on forms and in accordance with instructions prescribed by the Administrative Director and served in accordance with the provisions of Section 10013.

"(b) The employer shall report disability status to the Bureau:

"(1) Immediately upon knowledge that the employee is unlikely to be able to return to his or her usual and customary occupation, or occupation at the time of injury, on a permanent basis; or

"(2) Immediately following 180 aggregate days of total disability for cases not previously reported under (1) above.

"If the employee's condition does not permit determination of qualified injured worker status, at the time of reporting under (b) above, the employer shall indicate on its report a reasonable date when the determination will be reported."

inform the injured employee of his potential right to rehabilitation. In footnote 5, at page 630, the court recognized that notice to employees might be required even though they are not ultimately found to qualify. Entitlement to notice is conditioned upon the fact that the employee is unlikely to be able to return to his former occupation and is retrainable. But "[a]n injured employee should not be required to await a determination that he is unquestionably eligible before his right to be notified of the availability of rehabilitation arises. His likely inability to return to his previous job amply demonstrates his need to know about and carefully consider his rehabilitation option." (*Webb* v. *Workers' Comp. Appeals Bd.*, *supra*, 28 Cal.3d at p. 630, fn. 5.) Our high court further held that the employer has the burden of proving that he has complied with his duty to give proper notices to the Bureau of Rehabilitation and the employee. (*Id.*, at p. 634.)

An employer may comply with the law by giving the requisite information to the employee and notifying the Bureau of Rehabilitation. This is the appropriate response when it is apparent that the employee is unlikely to be able to return to the workplace and is retrainable. In a case such as the one under consideration here, however, the fact that the employee may not be able to return to work is not immediately manifest. What information must be available to the employer before the duty to inform arises? The employer knew that Babcock's duties included the need to expose her hands to chemicals, that the skin on her hands reacted to the point that she was forced to quit and seek medical attention, and that three different brands of shampoos were tried without relief. It is possible that medical intervention would result in treatment which would permit reemployment in the same occupation. It is possible, however, that curative measures may not be available, necessitating a change in occupations.

 It is consistent with the *Webb* holding that an employer has the burden of proof of compliance with its communicative duties and with *Webb*'s recognition that eligibility for rehabilitative services may be the subject of some doubt, to place upon an employer (who elects not to notify the employee of a potential right to rehabilitation services) a duty to investigate the potential need for rehabilitation if the employer or his insurer as reasonable persons/entities had reason to believe that such an investigation would be necessary in order to resolve the doubt.

Such an investigation is also mandated by California Administrative Code, title 8, section 9880 if an employer had notice of a claimed injury sufficient to make an investigation to determine whether the employee *may* be entitled to rehabilitation benefits. The section provides:

"Any employer upon receiving knowledge of an injury to an employee as defined in Labor Code Section 3208, *or notice or knowledge of a claimed*

*injury sufficient to afford an opportunity to make an investigation into the facts, shall within 5 working days advise the injured employee, or his or her dependents in the event of death, of the benefits to which the employee or dependents may be entitled.* The advisory document shall be in writing, but need not be in any particular form, and shall include, in non-technical terms, advice as to the right to receive medical care, to select or change the treating physician pursuant to the provisions of Labor Code Section 4600, to receive temporary disability indemnity, permanent disability indemnity, death benefits and *vocational rehabilitation where appropriate.* The document shall also contain information as to the services of Rehabilitation Consultants and Information and Assistance Officers located in the offices of the Division of Industrial Accidents, Workers' Compensation Appeals Board, and of the services of the Workers' Compensation Appeals Board as final arbiter of claims." (Italics added.)

Furthermore, California Administrative Code, title 8, section 10016, as written at the time of injury, provided for entitlement to rehabilitation benefits when "the employer knew, or with reasonable diligence should have known, of the employee's . . . likely inability to return to his or her customary occupation."[3]

 Whether the facts in this case were sufficient to alert the employer or her insurance carrier of the duty to inform and to notify is a question of fact, properly decided by the Board, not an appellate court.

We must annul the Board's decision and remand the cause for a determination of when the employer or SCIF had sufficient notice of the appropriateness of vocational rehabilitation services for Babcock. We have found

---

[3]"(a) An injured employee's entitlement to rehabilitation temporary disability indemnity payments shall commence on the day the employer knew, or with reasonable diligence should have known, of the employee's inability or likely inability to return to his or her usual and customary occupation or to the position he or she was engaged in at the time of injury. Such payments shall continue during the pendency of vocational rehabilitation services unless the Rehabilitation Bureau otherwise orders.

"(b) In determining the period for which employee is entitled to receive the rehabilitation temporary disability indemnity payment, the Bureau may consider the following factors:

"(1) The date on which the employer first obtained knowledge of the possible need for rehabilitation services.

"(2) Whether the employer has complied with Article 8.5 of the rules of the administrative director requiring the employer to advise the employee about entitlement to benefits.

"(3) Whether the employer has complied with the reporting requirements of Section 10004.

"(4) Whether the employee has requested vocational rehabilitation services.

"(5) Whether the employee has been cooperative, or available for vocational rehabilitation services.

"(6) Whether the employee is likely to benefit from the provision of vocational rehabilitation services."

that the employer knew or should have known that Babcock's contact dermatitis was caused by chemicals handled in the workplace. The Board will make a factual determination of whether that information was sufficient to trigger an inquiry to determine whether there was a potential need for rehabilitation.

## CONCLUSION

The decision of the Board is annulled and the case is remanded for further proceedings consistent herewith.

Franson, Acting P. J., and Hamlin, J., concurred.