[No. B003862. Second Dist., Div. Five. Mar. 13, 1985.]

INDUSTRIAL INDEMNITY COMPANY, Petitioner, v. WORKERS' COMPENSATION APPEALS BOARD and ELVIS ELIZONDO, Respondents.

634

COUNSEL

Manchester, Weling, Leland & Yager, Manchester, Weling & Leland and Stafford R. Leland for Petitioner.

Goshkin, Pollatsek, Meredith & Lee and Samuel E. Meredith as Amici Curiae on behalf of Petitioner.

Potter & Cohen, Bertram L. Potter, Richard W. Younkin, William B. Donohoe and Alvin R. Barrett for Respondents.

Merle C. Rabine as Amicus Curiae on behalf of Respondents.

OPINION

**FEINERMAN, P. J.**—Petitioner Industrial Indemnity Company seeks review of the order of respondent Workers' Compensation Appeals Board denying reconsideration of an order that petitioner pay to respondent Elvis Elizondo rehabilitation temporary disability indemnity during the period of his evaluation as a qualified injured worker under Labor Code section 139.5.[1] We conclude that the Board's order must be affirmed.

On June 4, 1981, Elvis Elizondo (applicant) sustained injury in the course of his employment as a journeyman taper by Raymond Interior Systems, insured by Industrial Indemnity Company (Industrial). The injury resulted in temporary disability from June 13, 1981, to October 8, 1981.

On October 8, 1981, Dr. Ching reported that applicant was able to return to work without restrictions. On October 24, 1981, Dr. Yamshon opined that applicant needed further medical care and was restricted in his activities based upon findings consistent with chondromalacia of the patella of applicant's right knee. In November 1981, applicant initiated a written request to the rehabilitation bureau (Bureau) for vocational rehabilitation benefits.

In December 1981, all parties entered into a compromise and release as to all issues except vocational rehabilitation benefits. An addendum thereto recognized existence of a dispute, as evidenced by the conflicting reports of

---

[1]Unless otherwise noted, all "section" references herein are to the Labor Code, and all "regulation section" references are to the regulations adopted by the Administrative Director of the Division of Industrial Accidents published in title 8, chapter 4.5 of the California Administrative Code. The period of evaluation commenced on January 28, 1982, and terminated on June 28, 1982.

Drs. Ching and Yamshon, regarding applicant's entitlement to vocational rehabilitation benefits, noting further that applicant was not then interested in a rehabilitation program.

After formal approval of the compromise, Industrial filed a request for closure of the case, whereupon applicant, in order to avert closure of his right to rehabilitation benefits, filed on January 28, 1982, a written request to the Bureau reaffirming his original request for benefits, requesting a conference on the disputed issue, and suggesting that the issue be resolved by reference to an independent medical examiner or an agreed medical examiner (AME).

Industrial failed to reply to applicant's request until March 1982, when its counsel arranged for a job analysis. That analysis was completed in late April 1982, and in May 1982, arrangements were completed for examination of applicant by an AME on June 28, 1982. The AME examined him and reported that he was now able to return to his work, thus in effect determining that applicant was not a qualified injured worker (QIW).

On the basis of the AME's report, the Bureau consultant issued an order that applicant could return to work, that Industrial had no further obligation to furnish rehabilitation services, and that the parties were attempting to resolve the issue of applicant's entitlement to temporary disability indemnity during the evaluation period from the January 28, 1982 filing of the request for benefits to the AME's June 28, 1982 report that applicant was not a QIW. When the parties were unable to resolve that issue, the consultant, basing her decision on the Board's panel ruling in the "Tlilayatzi" case (*Tlilayatzi* v. *State Compensation Ins. Fund* (1981) 77 ANA 74388, 9 Cal.Workers'Comp.Rptr. 212), ordered that Industrial pay temporary disability benefits for the evaluation period of January 28, 1982, to June 28, 1982.

Industrial appealed the consultant's order to the workers' compensation judge (WCJ), who, after a hearing, issued an order affirming and adopting the consultant's order. The WCJ found there was a good faith issue as to applicant's QIW status which required that he be examined by the AME whose report was to be determinative of applicant's QIW status and that the Bureau properly ordered Industrial to pay applicant rehabilitation temporary benefits during the evaluation of his status.

The Workers' Compensation Appeals Board (Board) denied reconsideration, concluding that since there was a good faith issue as to applicant's QIW status, he was entitled to the benefits during the evaluation period

despite eventually being determined not to be a QIW. The Board in essence based its decision upon liberal construction of workers' compensation laws in favor of the employee (§ 3202) and the Board's interpretation of section 139.5 in its previous panel rulings in *Tlilayatzi* v. *State Compensation Ins. Fund, supra,* 9 Cal.Workers'Comp.Rptr. 212, *Aguja* v. *Industrial Indemnity Co.* (1982) 79 SF 280-205, 10 Cal.Workers'Comp.Rptr. 205, and *Mosqueda* v. *Lear Siegler, Inc.* (1983) 81 LA 463-871, 11 Cal.Workers'Comp.Rptr. 252.

On review, petitioner Industrial contends that section 139.5 should be strictly construed to limit vocational rehabilitation benefits to employees who are ultimately determined to be qualified injured workers. They argue that to do otherwise would encourage false claims for benefits. As we shall explain, petitioner is mistaken.

Section 139.5 provides in part as follows: "(a) The administrative director shall establish within the Division of Industrial Accidents a rehabilitation unit, which . . . shall have all of the following duties: [¶] (1) To foster, review, and approve rehabilitation plans developed by a qualified rehabilitation representative of the employer, insurance carrier, state agency, or employee. [¶] (2) To adopt rules and regulations which would expedite and facilitate the identification, notification, and referral of industrially injured employees to rehabilitation services. [¶] (3) To coordinate and enforce the implementation of rehabilitation plans. . . . (c) When a qualified injured worker chooses to enroll in a rehabilitation program, he or she shall continue to receive temporary disability indemnity payments, plus additional living expenses necessitated by the rehabilitation program, together with all reasonable and necessary vocational training, at the expense of the employer or the insurance carrier, as the case may be. . . ."

In resolving the question presented herein, "our primary goal is to give effect to the purpose of section 139.5, seen in the context of the workers' compensation scheme as a whole." (*Webb* v. *Workers' Comp. Appeals Bd.* (1980) 28 Cal.3d 621, 626 [170 Cal.Rptr. 32, 620 P.2d 618].)

The statutory history of section 139.5 indicates the Legislature's intent to encourage employees to enroll in rehabilitation programs and to place on employers the primary duty of promptly making rehabilitation services available. (*Webb* at p. 628; see also *Tlilayatzi* v. *State Compensation Ins. Fund, supra,* 9 Cal.Workers' Comp.Rptr. at p. 212.)

In construing section 139.5, we consider two fundamental rules of statutory construction. First, the statute must be construed liberally in fa-

vor of extending benefits to the employee. (§ 3202; *Webb* v. *Workers' Comp. Appeals Bd.*, *supra*, 28 Cal.3d at p. 626.) The Supreme Court has repeatedly recognized that this rule of liberal construction shall be applied to all aspects of the workers' compensation laws (*ibid.*; see *LeBoeuf* v. *Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 234, 241 [193 Cal.Rptr. 547, 666 P.2d 989]), noting that the underlying policy of the workers' compensation statutes and their constitutional foundation (Cal. Const., art. XX, § 21), as well as the recurrent theme of countless appellate decisions on the matter, has been one of pervasive and abiding solicitude for the worker. (*Webb* v. *Workers' Comp. Appeals Bd.*, *supra*, 28 Cal.3d at p. 626; *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 233 [110 Cal.Rptr. 144, 514 P.2d 1224].)

■ Secondly, we apply the well-established principle that contemporaneous administrative construction of a statute by the agency charged with its enforcement and interpretation, while not necessarily controlling, is of great weight; and courts will not depart from such construction unless it is clearly erroneous or unauthorized. (*Cannon* v. *Industrial Acc. Comm.* (1959) 53 Cal.2d 17, 22 [346 P.2d 1]; see *Rivera* v. *City of Fresno* (1971) 6 Cal.3d 132, 140 [98 Cal.Rptr. 281, 490 P.2d 793]; *Killian* v. *City and County of San Francisco* (1978) 77 Cal.App.3d 1, 12 [143 Cal.Rptr. 430]; *Russell* v. *Carleson* (1973) 36 Cal.App.3d 334, 341 [111 Cal.Rptr. 497]; *Crumpler* v. *Board of Administration* (1973) 32 Cal.App.3d 567, 578 [108 Cal.Rptr. 293].)

■ Apparently, the July 1972 Report of the National Commission on State Workmen's Compensation Laws "was one of the motivating factors in the Legislature's enactment of the present Labor Code Section 139.5." (*Ponce de Leon* v. *Glaser Brothers* (1977) 42 Cal.Comp.Cases 962, 967.)[2] A recommendation therein was that "the medical-rehabilitation division be given the specific responsibility of assuring that *every worker* who *could* benefit from vocational rehabilitation services be offered those services." (Rep. of the National Com. on State Workmen's Comp. Laws (July 1972) § R 4.7, p. 82, italics added.) The report also "made it clear that the *early identification* of workers in need of and commencement of vocational rehabilitation services was essential for effective rehabilitation." (*Ponce de Leon* v. *Glaser Brothers, supra*, 42 Cal.Comp.Cases at pp. 967-968, italics added.)

In addressing the meaning of section 139.5, we note, as did the Supreme Court (*Webb* v. *Workers' Comp. Appeals Bd.*, *supra*, 28 Cal.3d at p. 627),

---

[2]The Board's interpretation of section 139.5 in *Ponce de Leon* v. *Glaser Brothers, supra*, 42 Cal.Comp.Cases 962 was cited and discussed by the Supreme Court in *Webb* v. *Workers' Comp. Appeals Bd.*, *supra*, 28 Cal.3d at pages 625-627.

that the Legislature "left us with little specific guidance for applying the statute to cases of this kind." In effect, it delegated to the administrative director the implementation and application of rehabilitation rules and regulations. (§ 139.5.)

Among the rules and regulations adopted pursuant to such statutory authorization, is regulation section 10016 which provides as follows:[3] "(a) Entitlement to rehabilitation temporary disability indemnity payments shall commence on the date an employee, entitled to receive rehabilitation services, requests rehabilitation services. Such payments shall continue during entitlement to vocational rehabilitation services unless the Rehabilitation Bureau orders otherwise. [¶] (b) Where the employer or insurer has breached its duty to comply with the reporting requirements of Section 10004 and/or failed to advise the employee of his/her rights to vocational rehabilitation services, entitlement to such payments shall commence from the date of such breach."

It is noteworthy that although section 139.5 refers generally to *qualified injured workers,* both the administrative regulations and national commission recommendations apply to *all workers who could benefit* from vocational rehabilitation. Such application is likewise suggested in another recommendation of the commission which was considered by the Supreme Court in *Webb* (*supra,* 28 Cal.3d at p. 629), "advising that the rehabilitation unit should 'have specific responsibility of assuring that *every injured employee who could benefit* from vocational rehabilitation services *be offered those services by the employer* . . . .' " (First italics added.)

In addition, the clear import of the stated goal of early identification of workers who choose to enroll in rehabilitation as mandated in section 139.5 is that an evaluation or screening process be undertaken.

In five rulings by the Board involving the administratively established evaluation process, commencing with its panel ruling in *Tlilayatzi* (*supra,* 9 Cal.Workers' Comp.Rptr. 212) and culminating with its en banc ruling in *Blunt* (*supra,* 49 Cal.Comp.Cases 678), the Board has applied section 139.5 to award vocational rehabilitation benefits during the evaluation period despite ultimate determination of non-QIW status, *provided* that the

---

[3]The original regulation section 10016 was amended by the administrative director "apparently for clarification, to comply with *Webb* [*Webb* v. *Workers' Comp. Appeals Bd., supra,* 28 Cal.3d 621], and to follow *Tlilayatzi* [*Tlilayatzi* v. *State Compensation Ins. Fund, supra,* 9 Cal.Workers'Comp.Rptr. 212]." (*Blunt* v. *Southern California Permanente Medical Group* (1984) 49 Cal.Comp.Cases 678, 686.)

worker in good faith provides prima facie evidence to support a request for rehabilitation benefits.

Thus, in *Tlilayatzi* (*supra,* 9 Cal.Workers'Comp.Rptr. 212) the panel, following the statutory purposes and interpretation enunciated in *Webb* (*supra,* 28 Cal.3d 621) and *Ponce de Leon* (*supra,* 42 Cal.Comp.Cases 962), concluded that the employee, in presenting prima facie evidence of eligibility, was entitled to benefits during the evaluation period despite ultimate determination of non-QIW status. In *Aguya* (*supra,* 10 Cal.Workers'Comp.Rptr. 205) and *Cal Fruit, Inc.* v. *Workers' Comp. Appeals Bd. (Guiterrez)* (1984) 49 Cal.Comp.Cases 278, the panel applied the same rationale and allowed benefits because the employee had presented prima facie evidence of eligibility. (See also *Cal. Cas. Indem. Exch.* v. *Workers' Comp. Appeals Bd.* (1983) 48 Cal.Comp.Cases 706.) In *Mosqueda* (*supra,* 11 Cal.Workers'Comp.Rptr. 252) and *Blunt* (*supra,* 49 Cal.Comp.Cases 678), application of the same rationale resulted in disallowance of benefits because the employee had not presented prima facie evidence of eligibility.[4]

The Board's statutory interpretation allowing benefits during the evaluation period, provided the employee in good faith presents prima facie evidence justifying a request for rehabilitation, clearly forecloses false claims. Such interpretation is consistent with, and not in conflict with, the statute, and is reasonably necessary to effect the statutory purposes. (*Russell* v. *Carleson, supra,* 36 Cal.App.3d at p. 341.) It is also consonant with *Webb* v. *Workers' Comp. Appeals Bd.* (*supra,* 28 Cal.3d 621), and not inconsistent with *San Diego Transit Corp.* (*supra,* 28 Cal.3d 635).

---

[4]Both *Tlilayatzi* and *Blunt* considered and rejected an argument (similarly raised in the instant case) that the Board's statutory interpretation is inconsistent with a statement in *San Diego Transit Corp.* v. *Workers' Comp. Appeals Bd. (Renfro)* (1980) 28 Cal.3d 635 [170 Cal.Rptr. 40, 620 P.2d 626] that "even if the employer contends its employee is not a qualified injured worker, no delay of temporary rehabilitation benefits should result so long as the issue is ultimately resolved in the employee's favor." (*Id.,* at p. 637.) *Renfro,* a companion case to *Webb,* held (*ibid.*): "For the reasons stated in *Webb,* we construe section 139.5 to mean that temporary rehabilitation benefits accrue from the time the employee requests rehabilitation unless the employer has breached its duty to offer rehabilitation services to the employee, in which case benefits accrue from the time of the breach."

As correctly noted in *Blunt* (*supra,* 49 Cal.Comp.Cases at p. 683), *Renfro* is distinguishable in that "the employer conceded that Ms. Renfro was a qualified injured worker. Thus the court was not considering the question of whether a candidate ultimately found unqualified should receive indemnity while being evaluated merely because he or she had requested rehabilitation." Moreover, as noted in *Tlilayatzi* (*supra,* 9 Cal.Workers'Comp.Rptr. at p. 213) the quoted statement from *Renfro* relied upon by the employer might properly be relied upon to excuse the employer's delay in paying temporary disability indemnity where eligibility is eventually successfully contested, but it does not necessarily justify denying benefits for the period while eligibility is being determined.

Moreover, when an employer knows that rehabilitation temporary benefits must be furnished during the QIW evaluation period, the employer has a business inducement to encourage early identification of workers in need of vocational rehabilitation benefits. (*Ponce de Leon* v. *Glaser Brothers, supra,* 42 Cal.Comp.Cases 962, 968.) In the long run, the public also benefits from the early commencement of those services essential to the effective vocational rehabilitation of the injured worker.

Here, Dr. Yamshon's report constituted prima facie evidence justifying applicant's request for rehabilitation benefits. The Bureau, the WCJ, and the Board properly determined that applicant was entitled to vocational rehabilitation benefits during the evaluation period.

The order denying reconsideration is affirmed.

Ashby, J., and Hastings, J., concurred.

Petitioner's application for review by the Supreme Court was denied May 30, 1985.