[No. F020491. Fifth Dist. May 4, 1994.]

ROCKY D. RITCHIE, Petitioner v.,
WORKERS' COMPENSATION APPEALS BOARD AND CITY OF
BAKERSFIELD, Respondents.

## COUNSEL

Rocky D. Ritchie, in pro. per., for Petitioner.

Hanna, Brophy, MacLean, McAleer & Jensen, Donald L. Powelson and Cinda C. Ayres for Respondents.

## OPINION

**DIBIASO, J.**—We hold that, under Labor Code[1] sections 139.5, 4850, and 4853, an injured municipal police officer is not entitled to receive a vocational rehabilitation maintenance allowance after the effective date of his or

---

[1] All statutory references are to the Labor Code unless otherwise indicated.

her disability retirement under the Public Employees' Retirement System (PERS).

## Procedural History

On August 20, 1991, Rocky D. Ritchie (petitioner), then a police detective for the respondent City of Bakersfield (the City), sustained an admitted injury to his back. In February 1992, after approximately six months of physical therapy, petitioner asked to be returned to work on light duty. Before consenting to this request, the City required that petitioner be tested by a physician selected by the City. During the testing, petitioner sustained a further back injury. His condition was thereafter considered permanent and stationary. On April 26 or 27, 1992, petitioner was retired under PERS industrial disability retirement and began receiving retirement benefits.

Because petitioner was unable to return to his usual occupation, rehabilitation services were initiated. On April 27, 1992, petitioner was evaluated and declared suitable for such services. Petitioner wanted to become an attorney and requested a rehabilitation plan which provided for four years of study at a local law school. The anticipated cost was $16,917.

The City admitted liability for rehabilitation. However, a dispute arose concerning (1) the length of time for which the City was required to provide rehabilitation services; and (2) petitioner's claim for a vocational rehabilitation maintenance allowance (VRMA) subsequent to the date of his retirement. On October 14, 1992, the parties attended a formal conference with a rehabilitation consultant from the rehabilitation unit. (§ 139.5.) As of that date, petitioner was already attending law school. The City agreed to contribute the cost of two of the projected four years of study, but petitioner wanted the cost of three years, VRMA from the date of his retirement to the date of the formal conference, and reinstatement of VRMA during the portion of the schooling to be paid for by the City.

The parties were unable to consensually resolve the controversy. The rehabilitation consultant therefore issued an opinion on December 22, 1992. Relying upon *Gorman* v. *Workers' Comp. Appeals Bd.* (1982) 133 Cal.App.3d 998 [184 Cal.Rptr. 406], the consultant ruled that under section 4853, VRMA benefits terminate upon the effective date of PERS retirement if the employee is a member of the public sector.

Petitioner appealed the consultant's decision to respondent Workers' Compensation Appeals Board (WCAB). Trial was held on March 18, 1993, and further proceedings took place before the workers' compensation judge

(WCJ) on June 24, 1993. The WCJ found that sections 4850 and 4853 terminated the City's liability for VRMA on the date of petitioner's retirement under PERS. All other pending issues were remanded by the WCJ to the rehabilitation unit.

Petitioner moved for reconsideration. The WCJ recommended denial of the motion, again relying upon sections 4850 and 4853. In due course, the WCAB adopted and incorporated the report and recommendation of the WCJ and denied petitioner's motion for reconsideration. The instant petition for a writ of review followed.[2]

DISCUSSION

Petitioner contends he is entitled to receive both his PERS retirement pension and VRMA so long as he is engaged in qualified vocational rehabilitation. The precise theory upon which petitioner relies to support this assertion is not altogether apparent from his briefs. He seems to take the position that because temporary disability indemnity (VRTD) and maintenance allowance indemnity (VRMA) are different, the fact that VRTD terminates upon retirement does not mean that VRMA also terminates upon retirement. We conclude that VRMA is a form of temporary disability indemnity and, as such, is not payable after the retirement of a city police officer under PERS.

I. *The Basic Compensation Scheme*

A. *Disability Indemnity*

■ Temporary disability indemnity (termed TD or medical TD) is the basic benefit payable to a worker who is temporarily disabled due to industrial injury; it serves as a substitute for wages lost by the employee during the time he or she is incapacitated from working. (*Jimenez* v. *Workers' Comp. Appeals Bd.* (1991) 1 Cal.App.4th 61, 63 [1 Cal.Rptr.2d 660]; *Livitsanos* v. *Superior Court* (1992) 2 Cal.4th 744, 753 [7 Cal.Rptr.2d 808, 828 P.2d 1195]; 1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (2d rev. ed. 1993) § 7.01[1], p. 7-4.) Medical TD benefits cease when the employee returns to work or is deemed medically able to return to work, or when the employee's medical condition becomes permanent and stationary. (1 Hanna, *supra*, at § 7.02[1], p. 7-7.)

Once the employee's condition has become permanent and stationary, he or she is entitled to permanent disability indemnity; these benefits are

---

[2]By granting the writ, we decided, adversely to the City, its contention that the petition was untimely.

intended as reimbursement for the employee's impaired future earning capacity or decreased ability to compete in the open labor market. (*Livitsanos* v. *Superior Court, supra,* 2 Cal.4th at p. 753.) Because an injured worker cannot be temporarily and permanently disabled at the same time, permanent disability payments do not begin until medical TD payments cease. (1 Hanna, *supra,* at § 7.02[1], p. 7-8.)

## B. *Vocational Rehabilitation*

■ In order to "restore the worker to as near his or her previous income-producing status as can be reasonably and properly done" (2 Hanna, *supra,* at § 35.01, p. 35-7), the compensation laws also provide for the payment of vocational rehabilitation (VR) benefits (*Jimenez* v. *Workers' Comp. Appeals Bd., supra,* 1 Cal.App.4th at p. 63). In the case of a worker who will be unable to return to his or her former job due to industrial injury, rehabilitation benefits consist of the costs of vocational training, counseling, and guidance, as well as certain additional living expenses, all for the purpose of preparing and adapting the worker to perform a new job or trade and enter a new work environment. (2 Hanna, *supra,* at § 35.01, pp. 35-7–35-8.)

## C. *Police Officers*

Sections 4850 and 4853 give additional compensation benefits to injured peace officers such as petitioner. Under the operation of these two sections, a city police officer who is a PERS member is entitled to a leave of absence without loss of salary, in lieu of TD or maintenance allowance (MA), for one year or until retirement on a disability pension (§ 4850).[3] If the disability continues beyond one year, the officer is entitled to a continued unpaid leave of absence until retirement, and is also permitted to secure whatever benefits

---

[3]In pertinent part, section 4850 provides: "Whenever any city policeman, . . . , who is a member of the Public Employees' Retirement System . . . is disabled, whether temporarily or permanently, by injury or illness arising out of and in the course of his or her duties, he or she shall become entitled, . . . , to leave of absence while so disabled without loss of salary in lieu of temporary disability payments or maintenance allowance payments under Section 139.5, if any, which would be payable under this chapter, for the period of the disability, but not exceeding one year, or until such earlier date as he or she is retired on permanent disability pension, and is actually receiving disability pension payments . . . ."

Section 4850 affords an extra benefit for employees who incur the risks of active law enforcement. (1 Hanna, *supra,* at § 3.114[1], p. 3-93.) It contemplates a hiatus between the onset of disability and disability retirement; its purpose is to permit the injured officer to receive his or her full salary during the period between the employer's determination that the officer is disabled and commencement of the disability pension. (*Boyd* v. *City of Santa Ana* (1971) 6 Cal.3d 393, 398 [99 Cal.Rptr. 38, 491 P.2d 830].) Payments made pursuant to section 4850 are considered workers' compensation benefits, not salary. (6 Cal.3d at p. 397.)

may be available under the workers' compensation laws (§ 4853).[4] (*Boyd v. City of Santa Ana, supra,* 6 Cal.3d at p. 397.)

## II. *VRMA*

### A. *Overview*

Payment of the vocational rehabilitation maintenance allowance, or VRMA is authorized by section 139.5, subdivision (c). ■ The statute was passed for the purpose of encouraging employees to enroll in rehabilitation. (2 Hanna, *supra,* at § 35.02, pp. 35-8–35-9 & fn. 4.) As enacted in 1965, it authorized the establishment of a rehabilitation unit within the Medical Bureau of the Division of Industrial Accidents (now Division of Workers' Compensation). As originally written, the statute made initiation of a rehabilitation program by the employer, and acceptance of a tendered program by the employee, voluntary. (*Id.,* at § 35.03[1], p. 35-10.)

Effective January 1, 1975, section 139.5 was amended to, among other things, (1) require establishment of a rehabilitation unit, (2) make rehabilitation programs mandatory for employers and their compensation carriers, and (3) expressly authorize the continuation of temporary disability indemnity during rehabilitation. (*Webb* v. *Workers' Comp. Appeals Bd.* (1980) 28 Cal.3d 621, 625, fn. 2 [170 Cal.Rptr. 32, 620 P.2d 618]; 2 Hanna, *supra,* at § 35.03[1], pp. 35-10–35-11.) Such temporary disability benefits received in conjunction with a VR program are often referred to as "VRTD," to distinguish them from medical TD received outside a rehabilitation program. (*Jimenez* v. *Workers' Comp. Appeals Bd., supra,* 1 Cal.App.4th at p. 64.)

The purpose underlying the Legislature's 1975 modification of section 139.5 to extend temporary disability benefits during rehabilitation was two-fold: (1) to encourage employees to enroll in rehabilitation training by maintaining financial support during the rehabilitative process; and (2) to motivate employers to make rehabilitation available promptly and thereby enable the employee to reenter the work force as soon as practicable. (*Webb* v. *Workers' Comp. Appeals Bd., supra,* 28 Cal.3d at p. 628.)

The Legislature originally envisioned that vocational rehabilitation services would be provided to the injured employee before his or her disability became permanent and stationary. (*Webb* v. *Workers' Comp. Appeals Bd.,*

---

[4]Section 4853 states: "Whenever such disability of any such officer or employee continues for a period beyond one year, such member shall thereafter be subject as to disability indemnity to the provisions of this division other than Section 4850 during the remainder of the period of said disability or until the effective date of his retirement under the Public Employees' Retirement Act, and the leave of absence shall continue."

*supra*, 28 Cal.3d at p. 634.) In practice, however, VR assistance frequently did not commence until after the employee's condition had become permanent and stationary. (2 Hanna, *supra*, at § 35.02, p. 35-9.) Consequently, section 139.5 was amended in 1989 to provide for the payment of a "maintenance allowance" benefit, which commences when the medical condition of a worker enrolled in a vocational rehabilitation program becomes permanent and stationary.[5] (*Jimenez* v. *Workers' Comp. Appeals Bd.*, *supra*, 1 Cal.App.4th at p. 64; 2 Hanna, *supra*, at § 35.03[2], p. 35-11.) It is paid in lieu of continued TD indemnity (2 Hanna, *supra*, at § 35.11[1], p. 35-24); in this regard, subdivision (d)(2) of section 139.5 provides that "[i]n no event shall temporary disability indemnity and maintenance allowance be payable concurrently." The acronym "VRMA" is usually used to refer to section 139.5's "maintenance allowance" in order to distinguish it from VRTD.

### B. *VRMA as a form of TD*

 The background of section 139.5, related above, makes it apparent that VRMA provides an interim source of financial support to the employee who is enrolled in rehabilitation training and whose condition is permanent and stationary. As such, it plays the same essential role in the compensation scheme as does VRTD.

This conclusion is supported by the legislative history of the relevant statutes. As noted above, section 139.5 was rewritten in 1989. (See Stats. 1989, ch. 892, § 24, pp. 3002-3003 (Assem. Bill No. 276); Stats. 1989, ch. 893, § 1, pp. 3040-3041 (Sen. Bill No. 47).) In pertinent part, the Enrolled Bill Report (Assem. Bill No. 276 (1989-1990 Reg. Sess.) as amended Sept. 15, 1989) took the position the bill "[r]evises the Temporary Disability benefit (TDI) for persons enrolled in vocational rehabilitation. For persons injured on or after January 1, 1990, and after the medical condition becomes permanent and stationary, but while the person is enrolled in vocational rehabilitation, a maintenance allowance, *in lieu of TDI*, will be paid." (Italics added.)[6]

A memorandum written by a deputy director of the Legislative Liaison Office of the Department of Employment Development, dated September 22,

---

[5]At the time of petitioner's injury in 1992, subdivision (c) of section 139.5 read as follows: "When an employee is determined to be medically eligible and chooses to enroll in a vocational rehabilitation program, he or she shall continue to receive temporary disability indemnity payments, and, after his or her medical condition becomes permanent and stationary, *a maintenance allowance*. The employee also shall receive additional living expenses necessitated by the vocational rehabilitation services, together with all reasonable and necessary vocational training, at the expense of the employer." (Italics added.)

[6]Webster's Third New International Dictionary (1986) page 1306 defines "in lieu of" as "in the place of: instead . . . ."

1989, expressed a concern with regard to Assembly Bill No. 276 and Senate Bill No. 47: "Both bills establish a maintenance allowance for injured workers receiving vocational rehabilitation services after the workers' injuries become permanent and stationary. Under current law, temporary disability benefits are paid to workers receiving vocational rehabilitation services. Disability insurance (DI) benefits are not paid if an injured worker is receiving temporary disability benefits. Since these new maintenance benefits are not defined as temporary disability, DI benefits would be paid to workers who have become permanent and stationary, and are receiving maintenance benefits. Receiving both maintenance benefits and DI could result in an injured worker receiving more income after an injury, than before he or she was injured. It seems unlikely that this was the intent of the Legislature. The Department recommends that this issue be clarified during the next legislative session."

Sections 139.5 and 4850 were amended by Statutes 1990, chapter 1550, sections 18 and 44, respectively. The modifications were contained in Assembly Bill No. 2910 (1989-1990 Reg. Sess.). In part, the bill added the phrase, "or maintenance allowance payments under Section 139.5," to section 4850. (Stats. 1990, ch. 1550, § 44.) In a letter to then-Governor Deukmejian dated September 10, 1990, Assemblyman Margolin, the bill's author, described the measure as a "cleanup bill" to the 1989 Workers' Compensation Reform Act. According to Assemblyman Margolin, one of the provisions of the bill would "[p]rohibit injured workers from supplementing their vocational rehabilitation temporary disability (or 'maintenance allowance') payments with SDI benefits except in very limited circumstances."

A similar observation was made in the Enrolled Bill Report prepared by the Employment Development Department of the Health and Welfare Agency, regarding Assembly Bill No. 2910 (1989-1990 Reg. Sess.). The report states in pertinent part: "Prior to last year's legislation, TD benefits were paid to workers receiving vocational rehabilitation services. Last year's bill created a new category of benefits, maintenance allowance. These benefits are paid when an injured worker's condition becomes permanent and stationary, and the worker chooses to enroll in a vocational rehabilitation program. These new benefits are at a lower rate than TD benefits. These lower rates were intended to provide an incentive to the injured worker to quickly complete vocational rehabilitation. However, the legislation did not explicitly state that maintenance allowance benefits were either a form of TD or that SDI benefits could not be issued concurrently. Without a clarification in statute, the SDI program would be liable for paying SDI while an individual is receiving maintenance allowance benefits. Although this was not the intent of the legislation, current statute creates a situation where an

individual who is in receipt of both maintenance allowance and SDI could be receiving more money than he or she earned prior to the injury." The Enrolled Bill Report concludes: "If the WC maintenance allowance is not specifically designated as a form of TD, the SDI program would incur a significant but unknown cost to the DI Fund for both benefits and administrative costs."

To remedy the problem, section 2629 of the Unemployment Insurance Code was amended to read:

"(a) Except as provided in this section, an individual is not eligible for disability benefits under this part for any day of unemployment and disability for which he or she has received, or is entitled to receive, 'other benefits' in the form of cash payments.

"(b) 'Other benefits,' as used in this section and Section 2629.1, means either of the following:

"(1) *Temporary disability indemnity* under a workers' compensation law of this state or of any other state or of the federal government *including*, for purposes of this code and Sections 4903 and 4904 of the Labor Code, *a maintenance allowance paid pursuant to Section 139.5 of the Labor Code.*

"(2) Temporary disability benefits under any employer's liability law of this state or of any other state or of the federal government.

" . . . . . . . . . . . . . . . . . . . . . . . . . .

"(c) Except for a maintenance allowance paid pursuant to Section 139.5 of the Labor Code, if these 'other benefits' are less than the amount an individual would otherwise receive as disability benefits under this part, he or she shall be entitled to receive, for that day, if otherwise eligible, disability benefits under this part reduced by the amount of these 'other benefits.'

"(d) An individual shall be entitled to receive, for any day, if otherwise eligible, disability benefits under this part reduced by the amount of the maintenance allowance and permanent disability indemnity if both of the following conditions are met:

"(1) The individual elects to receive the maximum permanent disability indemnity pursuant to paragraph (2) of subdivision (d) of Section 139.5 of the Labor Code.[7]

"(2) The sum of the maintenance allowance and permanent disability indemnity is less than the amount an individual would otherwise receive as disability benefits under this part." (Italics added.)[8]

We find nothing in this history which discloses an intent on the part of the Legislature to treat VRMA any differently than VRTD for purposes of sections 4850 and 4853. To the contrary, we find an unmistakable expression of legislative intent that VRMA be treated as a form of TD, payable after the injured worker's condition has become permanent and stationary and while he or she is enrolled in a vocational rehabilitation program.[9]

The references in the legislative materials to maintenance allowance as a "new" benefit does not change our mind; placed in context, it signifies only that there did not previously exist a benefit *by that name.* The fact that the rate at which VRMA is payable, before any allowable supplementation with permanent disability benefits, is set at a lower maximum than TD benefits merely demonstrates a desire to encourage the employee without permanent disability benefits to complete rehabilitation as soon as possible.

---

[7]Section 139.5, subdivision (d)(2) gives the employee the option of supplementing the maintenance allowance with "an additional amount from permanent disability indemnity due or payable, sufficient to provide . . . a maintenance allowance equal to two-thirds of the employee's average weekly earnings at the date of injury . . . ."

[8]In 1993, Unemployment Insurance Code section 2629, subdivision (b) was amended to define "other benefits" to include "[p]ermanent disability benefits for the same injury or illness under the workers' compensation law of this state, any other state, or the federal government." (Stats. 1993, ch. 748, § 8.)

[9]Recent changes to section 139.5, subdivision (c), applicable to injuries occurring on or after January 1, 1994, arguably evidence a legislative view that VRMA and TD are substantially different. In this connection, subdivision (c) now states in part that "in no event shall the expenses, counseling fees, training, maintenance allowance, and costs associated with, or arising out of, vocational rehabilitation services incurred after the employee's request for vocational rehabilitation services, *except temporary disability payments,* exceed sixteen thousand dollars ($16,000)." (Italics added.) In addition, subdivision (c) places a 52-week cap on the period of time for which a maintenance allowance can be paid.

On the other hand, these new provisions can be seen as simply evincing a desire to gain control over spiraling workers' compensation costs and to encourage the injured worker to enroll in rehabilitation as soon as possible. This construction is supported by the portion of subdivision (c) which states: "The administrative director shall adopt regulations to ensure that the continued receipt of vocational rehabilitation maintenance allowance benefits is dependent upon the injured worker's regular and consistent attendance at, and participation in, his or her vocational rehabilitation program."

C. *Termination of VRMA Upon PERS Retirement*

The cases decided before the 1990 modifications to sections 139.5 and 4850 were clear that TD indemnity terminated upon retirement of the officer under PERS, whether or not the officer was enrolled in a rehabilitation program. In *State Compensation Ins. Fund v. Workmen's Comp. Appeals Bd.* (1972) 26 Cal.App.3d 200 [103 Cal.Rptr. 29], the question on appeal was whether a police officer who retired on a disability pension under the State Employees' Retirement System (SERS, now PERS[10]) was entitled to TD indemnity after the effective date of his retirement and until his condition became permanent and stationary. The opinion does not indicate whether the officer was engaged in rehabilitation. The WCAB had concluded that under section 4850, the officer was not entitled to receive his full salary after the effective date of his retirement; however, he was entitled to TD indemnity as long as he remained temporarily totally disabled. (26 Cal.App.3d at p. 202.)

The Court of Appeal reversed. It held that the officer's entitlement to receive TD expired upon his effective date of retirement. (*State Compensation Ins. Fund v. Workmen's Comp. Appeals Bd., supra,* 26 Cal.App.3d at p. 204.) The court concluded: "If full salary 'in lieu of temporary disability payments' ceases upon retirement under section 4850, temporary disability payments must, in all logic, also cease upon retirement under section 4853." (26 Cal.App.3d at p. 204.) Therefore, an award of TD indemnity to a city policeman could not extend beyond the effective date of retirement on a disability pension under SERS (PERS). (*Ibid.*)

In *Gorman v. Workers' Comp. Appeals Bd., supra,* 133 Cal.App.3d 998, after a police officer's injury resulted in permanent partial disability, he took a one-year leave of absence with pay under section 4850 and thereafter was granted a disability retirement. A rehabilitation plan was subsequently initiated. The employer did not oppose the petitioner's right to participate in VR or receive other benefits, but did object to the assertion he was entitled to continue to receive TD indemnity payments under section 139.5, subdivision (c) in addition to disability retirement payments.[11] The petitioner identified TD benefits paid after commencement of rehabilitation as "rehabilitation maintenance." The WCAB concluded that, under section 4853, the petitioner was not eligible for TD under the Workers' Compensation Act or section 139.5 once he retired for disability. (133 Cal.App.3d at pp. 999-1001.)

---

[10] *Claypool v. Wilson* (1992) 4 Cal.App.4th 646, 653 [6 Cal.Rptr.2d 77].

[11] Taking into account nonsubstantive changes made in the 1982 amendment, subdivision (c) of section 139.5 then read: "When a qualified injured worker chooses to enroll in a rehabilitation program, he or she shall continue to receive temporary disability indemnity payments, plus additional living expenses necessitated by the rehabilitation program, together with all reasonable and necessary vocational training, at the expense of the employer or insurance carrier, as the case may be."

The Court of Appeal agreed. (*Gorman v. Workers' Comp. Appeals Bd.*, *supra*, 133 Cal.App.3d at p. 1000.) It stated:

"Petitioner acknowledges that generally a safety employee's right to temporary disability benefits under the Workers' Compensation Act terminates on the effective date of his retirement pursuant to section 4853. His principal argument is that what he calls 'rehabilitation maintenance' is something other than temporary disability benefit payments under the Workers' Compensation Act; that the purpose of 'rehabilitation maintenance' is different from that of temporary medical disability payments under the act; and that section 4853 terminating the right of a safety employee to temporary disability benefit payments under the act on the effective date of retirement should not be read as terminating a safety employee's right to receive 'rehabilitation maintenance' payments.

"We think the reference to 'rehabilitation maintenance' serves little purpose but to muddy the waters. If by that term the petitioner has reference not only to the continued temporary disability indemnity payments referred to in subdivision (c) of section 139.5 but also the additional living expenses referred to in the statute,[12] it is necessary to clarify one point immediately. The only benefit petitioner has been denied is continued temporary disability indemnity payments.

"We think petitioner is correct in asserting that the purpose of continuing temporary disability benefit payments during the course of rehabilitation serves a somewhat different purpose than the payment of temporary disability benefits in the first instance. Obviously, the purpose of continued payments during rehabilitation is to provide sustenance for the employee during the rehabilitative process. However, that statutory purpose is in no way thwarted by the ruling and order of the Board that a safety employee who has retired for disability and is receiving disability retirement payments is not also entitled to continued temporary disability payments. Sustenance is provided the employee during the rehabilitative process by the disability retirement payments being received by him.

"In any event, the Legislature in this instance has by the language it used made its intention in respect to this problem quite clear. It did not employ a new term for the temporary support to be paid an injured worker during the course of a program of rehabilitation. It specifically, and no doubt deliberately, spoke of the payments to be received as a continuation of temporary

---

[12]In a footnote at this point the court stated: "At oral argument counsel for petitioner stated that by the term 'maintenance' he meant nothing other than continued temporary disability benefits as specified in section 139.5, subdivision (c)." (*Gorman v. Workers' Comp. Appeals Bd., supra*, 133 Cal.App.3d at p. 1001, fn. 5.)

disability indemnity payments—he shall continue to receive temporary disability indemnity payments.' [Citation.]

"And the meaning of section 4853 is perfectly clear: when a safety employee has received a disabling industrial injury and the disability continues beyond one year, the employee 'shall thereafter be subject as to disability indemnity to the provisions of this division [he or she shall receive temporary disability benefits up to the maximum number of weeks allowed] . . . during the remainder of the period of said disability *or until the effective date of his retirement under the Public Employees' Retirement Act* . . . .' [Citation.] In other words, upon the effective date of his or her retirement under the Public Employees' Retirement Act, the right to temporary disability benefits under the Workers' Compensation Act terminates. [Citation.]" (*Gorman* v. *Workers' Comp. Appeals Bd.*, *supra*, 133 Cal.App.3d at pp. 1001-1002.)

We cannot improve upon *Gorman*'s language or reasoning; we find it persuasive and applicable by analogy here.

After *Gorman* was decided, the Legislature itself "muddied the waters" by adopting the term "maintenance allowance" to identify the "new" benefits extended by the 1989 amendment to section 139.5. Although the Legislature subsequently added a reference to the "maintenance allowance" in section 4850, it did not also comparably amend section 4853 or otherwise clarify the language in that statute regarding "the provisions of *this* division . . . ." (Italics added.) However, " '[i]t is a generally accepted principle that in adopting legislation the Legislature is presumed to have had knowledge of existing domestic judicial decisions and to have enacted and amended statutes in the light of such decisions as have a direct bearing upon them.' " (*Estate of McDill* (1975) 14 Cal.3d 831, 839 [122 Cal.Rptr. 754, 537 P.2d 874].) Thus, we can presume that when it amended section 4850, the Legislature was aware of both *Gorman* and *State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd.* (1979) 88 Cal.App.3d 43 [152 Cal.Rptr. 153].[13] Given this then extant case law, the Legislature may have felt it was unnecessary to amend section 4853 in order to ensure that VRMA payments were treated in the same manner as VRTD payments upon the injured party's disability retirement under PERS.

---

[13]Section 4853 expressly refers to disability indemnity under "the provisions of this division [division 4 of the Labor Code] other than section 4850." Because section 139.5, the statute which authorizes VRMA, is not found in division 4, it is at least textually possible to read section 4853 as requiring that only TD benefits, and not VRMA, terminate upon the officer's retirement. However, "although section 139.5 appears in division 1 of the code, *there is no doubt that it was intended to be part of the workers' compensation laws found in divisions 4 and 5.*" (*State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd.*, *supra*, 88 Cal.App.3d at p. 55, italics added.)

*Burns* v. *Workers' Comp. Appeals Bd.* (1987) 190 Cal.App.3d 759 [235 Cal.Rptr. 610] does not require a contrary result. Although the court there declined to apply what it characterized as the *Gorman* "dictum" "that VRTD need not be provided after the effective date of a public safety employee's disability retirement" (at p. 767), the case involved the disability retirement of a deputy sheriff under the County Employees Retirement Law (CERL), not PERS. The Court of Appeal found that section 4853 did not apply to CERL retirements, and so did not limit the right to VRTD after the effective date of such retirement. (*Burns* v. *Workers' Comp. Appeals Bd., supra,* 190 Cal.App.3d at p. 766.) It held that section 4853 does not affect the right of a public safety worker specified in section 4850 to receive VRTD after the effective date of a CERL disability pension, regardless of the simultaneous receipt of a PERS service pension earned in prior employment for a different governmental entity. (190 Cal.App.3d at p. 767.) It is settled that CERL retirees are treated differently from PERS retirees for purposes of sections 4850 and 4853. (See, e.g., *State Compensation Ins. Fund* v. *Workmen's Comp. Appeals Bd., supra,* 26 Cal.App.3d at pp. 202, fn. 3; *Pennington* v. *Workmen's Comp. Appeals Bd.* (1971) 20 Cal.App.3d 55, 59-60 [97 Cal.Rptr. 380].)

D. *Conclusion*

 Under the 1982 version of section 139.5, subdivision (c), an injured employee was entitled to continue receiving TD indemnity payments while participating in a rehabilitation program. *Gorman* determined that this right terminated upon PERS disability retirement for those employees subject to sections 4850 and 4853. As it read at the time petitioner was injured, subdivision (c) of section 139.5 allowed the employee to continue to receive TD indemnity payments until his or her medical condition became permanent and stationary, after which he or she could receive a maintenance allowance. The purpose of VRTD and VRMA is the same, i.e., to provide a basic level of sustenance for the employee during the rehabilitative process. Rationally, then, the result must also be the same: like VRTD, VRMA terminates upon PERS disability retirement for those employees covered by sections 4850 and 4853.[14]

In examining the various relevant statutes, we are obliged to assess them together and give effect to each, in the context of the workers' compensation

[14]It appears that employees who do not fall within the ambit of sections 4850 and 4853 may concurrently receive VR benefits under section 139.5 and PERS disability retirement payments. (See, e.g., *Los Angeles Unified School Dist.* v. *Workers' Comp. Appeals Bd.* (1984) 150 Cal.App.3d 823, 826-828 [198 Cal.Rptr. 116]. Some workers may concurrently receive permanent disability indemnity and PERS disability retirement payments. (See, e.g., *City of Palo Alto* v. *Industrial Acc. Com.* (1959) 175 Cal.App.2d 83, 88 [345 P.2d 586].) Whatever the seeming illogic of these results when compared to that in the instant matter, we are

system as a whole. (*Amborn* v. *Workmen's Comp. Appeals Bd.* (1971) 19 Cal.App.3d 953, 956 [97 Cal.Rptr. 466]; *City of Palo Alto* v. *Industrial Acc. Com., supra,* 175 Cal.App.2d 83, 85.) We believe our decision satisfies this command as well as our obligation to " 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' " (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) Moreover, while we are mindful that in cases of ambiguity or uncertainty we are required to liberally construe the worker's compensation laws in favor of the injured employee (§ 3202; *Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668 [150 Cal.Rptr. 250, 586 P.2d 564]; *Moyer* v. *Workmen's Comp. Appeals Bd., supra,* 10 Cal.3d at p. 233; *Charles* v. *Workers' Comp. Appeals Bd.* (1988) 202 Cal.App.3d 781, 784 [248 Cal.Rptr. 805]), this principle does not permit us to " 'accomplish[] an end not within the terms of the statute, however desirable such a result might be in the view of the . . . court.' [Citation.]" (*City of Palo Alto* v. *Industrial Acc. Com., supra,* 175 Cal.App.2d at p. 86.) The Legislature is certainly free, if we have misread its mind, to amend the relevant statutes in order to make its intentions clear.

Denial of postretirement VRMA benefits does not deny petitioner rehabilitative services. The City has admitted liability for rehabilitation, although there is still a dispute over the length and nature of the rehabilitation plan. It also appears petitioner will be eligible to receive the additional living expenses, if any, referred to in subdivision (c) of section 139.5. (Cf. *Gorman* v. *Workers' Comp. Appeals Bd., supra,* 133 Cal.App.3d at p. 1001.)

III. *Lack of Discrimination*

██ Petitioner claims that the result arrived at by the WCAB impermissibly discriminates against municipal peace officers.[15] He points to sections

---

concerned only with the factual scenario before us. Neither consistency nor logic is a hallmark of the compensation statutes. (Cf. *Jimenez* v. *Workers' Comp. Appeals Bd., supra,* 1 Cal.App.4th at p. 65 [workers' compensation system "is replete with examples of disparity between workers based on many factors . . . ."].)

[15]The City claims this argument is not properly before us. Section 5904 states: "The petitioner for reconsideration shall be deemed to have finally waived all objections, irregularities, and illegalities concerning the matter upon which the reconsideration is sought other than those set forth in the petition for reconsideration." Petitioner raised the discrimination issue by an exhibit included with his petition for reconsideration. The City has failed to show this method was improper. Moreover, the WCJ addressed the discrimination issue in her report and recommendation. Accordingly, we conclude the issue was not waived.

4800[16] and 4803,[17] which he says treat California Highway Patrol members of PERS differently than he has been treated. Petitioner also cites *Long Beach City Employees Assn.* v. *City of Long Beach* (1986) 41 Cal.3d 937 [227 Cal.Rptr. 90, 719 P.2d 660], where the California Supreme Court required the city to demonstrate that the classifications drawn by the statutes there at issue were justified by a compelling governmental interest, and that the distinctions drawn (i.e., exclusion of public employees from immunity from involuntary polygraph testing) were necessary to further that purpose. (*Id.* at p. 948.)

The statute at issue in *Long Beach*, however, infringed upon a fundamental interest, the employees' right to privacy. (*Long Beach City Employees Assn.* v. *City of Long Beach, supra,* 41 Cal.3d at p. 948.) ▇ By contrast, "[i]n equal protection cases not involving suspect classifications or the alleged infringement of a fundamental interest, the classification is upheld if it bears a rational relationship to a legitimate state purpose." (*Hansen* v. *Workers' Compensation Appeals Bd.* (1993) 18 Cal.App.4th 1179, 1182 [23 Cal.Rptr.2d 30]; see *McGowan* v. *Maryland* (1961) 366 U.S. 420, 425-426 [6 L.Ed.2d 393, 398-399, 81 S.Ct. 1101].) In such situations, "the test is whether there is a rational basis" for the challenged requirement or classification. (*Hansen, supra,* at p. 1183.) "In applying that test, all presumptions are in favor of the constitutionality of the statute; the courts will not invalidate the Legislature's classification unless it is palpably arbitrary and irrational. [Citation.]" (*Ibid.*)

▇ Assuming the various statutes cited by petitioner do treat California Highway Patrol officers who are PERS members differently from city police officers who are PERS members, no fundamental interest or suspect classification is involved. (See *State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd., supra,* 88 Cal.App.3d at p. 62 [rational basis test appropriate in determining whether § 139.5 mandatory for private, but not public, employees].) Article 6 (§§ 4800-4810) and article 7 (§§ 4850-4855) have different legislative histories; decisions dealing with article 7 do not control decisions dealing with article 6. (*Department of Justice* v. *Workers' Comp. Appeals Bd.* (1989) 213 Cal.App.3d 194, 202 [261 Cal.Rptr. 130].) The Legislature has

---

[16]Section 4800 provides in part: "Whenever any member of the California Highway Patrol or any member of the Department of Justice falling within the 'state safety' class is disabled by injury arising out of and in the course of his duties, he shall become entitled . . . to leave of absence while so disabled without loss of salary, in lieu of disability payments under this chapter, for a period of not exceeding one year."

[17]Section 4803 provides in part: "Whenever such disability . . . continues for a period beyond one year, such member . . . shall thereafter be subject, as to disability indemnity, to the provisions of this division other than Section 4800, which refers to temporary disability only, during the remainder of the disability . . . , and the leave of absence shall continue."

frequently applied different requirements depending on the type of peace officer involved. (See, e.g., Gov. Code, §§ 20603.2, 20604, 20605, 20605.1, 20607, 20980, 20980.1, 20980.5.) In view of the variations in these schemes, "it is hardly surprising to find that the work[ers'] compensation law contains some provisions which apply differently to the two classes . . . ." (*Pennington* v. *Workmen's Comp. Appeals Bd.*, *supra*, 20 Cal.App.3d at p. 59.)

As stated in *Saal* v. *Workmen's Comp. Appeals Bd.* (1975) 50 Cal.App.3d 291, 299-300 [123 Cal.Rptr. 506]:

"Petitioner's theory not only defies the clearly expressed intent of the Legislature, it also assumes, as its major premise, that an economic benefit which the Legislature confers upon one group of public employees must, as a matter of constitutional law, be made available to another public employee who is able to persuade the appropriate tribunal that his employment is comparable.

"In enacting a workers' compensation law, the Legislature has broad power to classify employees in relation to the benefits provided. 'It is the duty of the Legislature to determine whether the facts justify such a classification and the burden of the challenger to show that the legislative conclusion is arbitrary. [Citation.] . . . "Wide discretion is vested in the Legislature in making the classification and every presumption is in favor of the validity of the statute; the decision of the Legislature as to what is a sufficient distinction to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary and beyond a rational doubt erroneous." ' [Citation.]

"This same broad power of classification, and the presumption in favor of the Legislature's exercise of its discretion, apply to other laws governing the terms and conditions of public employment. [Citations.]"

Petitioner has not called our attention to any authority which requires the Legislature to set his benefits by reference to the benefits received by a different group of peace officers.[18] (Cf. *Saal* v. *Workmen's Comp. Appeals Bd.*, *supra*, 50 Cal.App.3d at p. 300.) We therefore hold that municipal peace officers do not suffer impermissible discrimination as a result of the termination of their VRMA benefits upon disability retirement under PERS.

---

[18]At oral argument petitioner referred to section 3751, subdivision (a), and section 3752. These statutes prohibit, for example, an employer from charging an employee sick leave for time off work due to an injury covered by the Workers' Compensation Act or withholding compensation premiums from an employee's pay. Whatever the scope of these sections, they are not applicable to the issues before us in this case.

We sympathize with petitioner, who ably argued his position. However, relief (if any) must come from, and petitioner's arguments must be made to, the Legislature, which is responsible for whatever incongruities may exist in the compensation system in its present form.

## DISPOSITION

The order denying reconsideration is affirmed.

Stone (W. A.), Acting P. J., and Thaxter, J., concurred.

Petitioner's application for review by the Supreme Court was denied August 11, 1994.