[No. B202828. Second Dist., Div. Five. Sept. 25, 2008.]

CARLOS MEDRANO, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
STATE COMPENSATION INSURANCE FUND, Respondents.

## COUNSEL

Jackson & Jackson and Gary A. Jackson for Petitioner.

Robert W. Daneri, Suzanne Ah-Tye and David M. Goi for Respondent State Compensation Insurance Fund.

No appearance for Respondent Workers' Compensation Appeals Board.

OPINION

MOSK, J.—

## INTRODUCTION

Both the workers' compensation judge (WCJ) and the Workers' Compensation Appeals Board (Board) determined that Carlos Medrano (Medrano), who suffered an industrial injury, was entitled to vocational rehabilitation services, including continuing payment of vocational rehabilitation maintenance allowance (VRMA), retroactive to the last temporary disability payment. The Board determined, however, that State Compensation Insurance Fund (State Fund), the employer's insurer, was allowed a credit against VRMA for wages Medrano earned at employment subsequent to the employment at which he was injured. Applying the reasoning in *Gamble v. Workers' Comp. Appeals Bd.* (2006) 143 Cal.App.4th 71 [49 Cal.Rptr.3d 36] (*Gamble*), we hold that VRMA is not a wage replacement benefit, and therefore there should be no credit against the worker's VRMA payments for wages earned during the same period the worker was awarded VRMA payments.

## FACTUAL AND PROCEDURAL BACKGROUND

While employed on May 2, 2002, by Aquabrew, Inc. (Aquabrew), Medrano sustained an injury. State Fund accepted liability and paid temporary disability indemnity at the rate of $350.00 per week for the period of June 19, 2002, to August 10, 2004. Labor Code former section 4636, subdivision (c)[1] provides that when, as here, the employee's aggregate temporary disability exceeds 365 days, there is a presumption that the employee is medically eligible for vocational rehabilitation services.[2] On June 11, 2003, State Fund sent Medrano the required Notice of Potential Eligibility (NOPE) letter[3] combined with a denial of vocational rehabilitation. The letter advised Medrano that he was not eligible for vocational rehabilitation services based on his employer's offer of modified or alternative work.

Former section 4644 sets forth the conditions necessary for termination of the employer's liability for vocational rehabilitation services. The obligation to provide services can be terminated if the employer offers, and the

---

[1] All statutory references are to the Labor Code unless otherwise indicated.

[2] Some of the vocational rehabilitation statutes apply only to workers injured before January 1, 2004. (See *post.*)

[3] Former § 4637 sets forth the requirements for the notice of eligibility for vocational rehabilitation, which includes an explanation of services, how to apply for services, the time limits to apply and the right to services of a qualified rehabilitation representative. (See also Cal. Code Regs., tit. 8, § 9813, subd. (d)(2).)

employee accepts or rejects, modified or alternative work. (Former § 4644, subd. (a)(5), (6) or (7).) If an offer of modified or alternative work meets the criteria of former section 4644, subdivision (a)(5), (6), or (7), a written plan or approval from the Rehabilitation Unit[4] is not necessary. (Cal. Code Regs., tit. 8, § 10126, subd. (b)(1).) The worker has 30 days to accept or reject a bona fide offer. If the offer is not accepted or rejected within 30 days, the offer is deemed rejected unless there is an agreement for an extension of time.

Medrano did not respond to a June 11, 2003, Notice of Offer of Modified or Alternative Work[5] within the allowable time authorized by the regulation. Accordingly, State Fund submitted a Notice of Termination of Vocational Rehabilitation Services to the Rehabilitation Unit.[6]

Thereafter, Medrano instituted proceedings with the Rehabilitation Unit to request vocational rehabilitation services. The Rehabilitation Unit reviewed the position statements of the parties and issued a determination that Medrano was entitled to full vocational rehabilitation services and retroactive VRMA, on a wage-loss basis from April 1, 2004, until a qualified rehabilitation representative evaluated the offer of modified/alternative work for compliance with the regulations.

State Fund appealed the determination of the Rehabilitation Unit. At the hearing on the appeal, Medrano testified that he last worked for Aquabrew in 2002 and went to work for another company on October 31, 2005, where he continued to work.

The WCJ determined that Medrano was entitled to full vocational rehabilitation services, as the offer of modified/alternative work was not appropriate because it was made while Medrano was still medically temporarily disabled, which meant he was completely unable to work. Accordingly, the offer was premature. Moreover, the WCJ found the offer did not comply with former section 4644, as it did not confirm that the job would last at least 12 months; it did not provide the salary of the position or the location of the job; and it did not provide an adequate description of the duties. Also, the WCJ noted that a job description was not submitted to Medrano's primary treating physician for an opinion as to the suitability of the offer in view of Medrano's injuries.

---

[4] The administrative director of the Division of Workers' Compensation (§ 110, subd. (b)), established a vocational rehabilitation unit (Rehabilitation Unit) that reviews vocational rehabilitation services and develops rules and regulations for procedures to facilitate the timeliness and quality of vocational rehabilitation services. (§ 139.5, subd. (a)(1)–(6).)

[5] Form RU-94 (01/03) California Code of Regulations, title 8, section 10133.12.

[6] Form RU-105 (05/03) California Code of Regulations, title 8, section 10133.16. The record did not contain evidence of a response from the Rehabilitation Unit as to the filing of the notice of termination.

There was no other offer of modified/alternative work from Aquabrew after Medrano's medical condition became permanent and stationary.[7] Medrano was also awarded retroactive VRMA from March 31, 2004, to October 31, 2005, at the rate of $350 a week, less temporary disability paid during that period. The termination date of the VRMA awarded was when Medrano returned to the labor market.

The WCJ set aside his Findings and Award and allowed the parties to reopen the record and brief the issue addressed in a then recently published opinion, *Gamble, supra*, 143 Cal.App.4th 71. The court in *Gamble* considered whether an employer could receive credit against wages earned during the period of time the worker was awarded VRMA while he continued to work at concurrent employment that preexisted the industrial injury. The court held that the first employer could not take a credit for wages earned at the secondary, concurrent employment against VRMA payable amounts. (*Id.* at p. 94.)

After a second hearing, the WCJ awarded VRMA from March 31, 2004, and continuing until Medrano completed a vocational rehabilitation plan or he refused to enter into a plan, or it was found that he was not "feasible"[8] to participate in such a plan, whichever occurred first. The rate of VRMA payment was to be made at the "delay" rate. Former section 4642, subdivision (a) allowed for payment at the "delay" rate, which is the same rate payable for temporary disability, as opposed to the allowable maximum rate of VRMA at $246 a week. (§ 139.5, subd. (d)(1).) Citing *Gamble, supra*, 143 Cal.App.4th 71, the WCJ also concluded that State Fund was not entitled to credit for wages earned by Medrano in subsequent employment during the period of time he was awarded VRMA.

State Fund filed a Petition for Reconsideration, contending it met its obligation to provide vocational rehabilitation services, and alternately, if required to pay VRMA, it was entitled to full credit for wages earned against any VRMA that may be due. The Board granted review and issued an Opinion and Decision agreeing with the WCJ's decision that Medrano was entitled to full vocational rehabilitation services. The Board, however, determined that the amount of his earnings from subsequent employment must be subtracted from the VRMA to which he was entitled.

---

[7] " 'Permanent and stationary status' is the point when the employee has reached maximal medical improvement, meaning his or her condition is well stabilized, and unlikely to change substantially in the next year with or without medical treatment." (Cal. Code Regs., tit. 8, § 9785, subd. (a)(8).)

[8] Former section 4635, subdivision (a)(2) ("The employee can reasonably be expected to return to suitable gainful employment through the provision of vocational rehabilitation services, hereafter referred to as 'vocational feasibility.' "); see *Grupe Co. v. Workers' Comp. Appeals Bd.* (2005) 132 Cal.App.4th 977, 983 [34 Cal.Rptr.3d 98].

Medrano filed a petition for review that this court summarily denied. He then filed a petition for review by the Supreme Court. On July 9, 2008, the Supreme Court granted review, and the matter was transferred to this court with directions to vacate its order denying the petition for writ of review and to issue a writ of review.

## DISCUSSION

### A. *Standard of Review and Applicable Principles*

■ As the facts are not disputed in the instant case, the issue presented is a question of law, subject to de novo review on appeal. (*Edgar v. Workers' Comp. Appeals Bd.* (1998) 65 Cal.App.4th 1, 8 [76 Cal.Rptr.2d 83].) The fundamental rule of statutory interpretation is to ascertain the intent of the Legislature as to the purpose of the law by first looking at the plain meaning of the words in the statute. (*In re J. W.* (2002) 29 Cal.4th 200, 209 [126 Cal.Rptr.2d 897, 57 P.3d 363].) If the language has more than one reasonable interpretation, the courts may look to other sources, including the legislative history, the purpose of the statute, and public policy. (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977 [90 Cal.Rptr.2d 260, 987 P.2d 727].) "After considering these extrinsic aids, we 'must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " (*Id.* at pp. 977–978.)

■ The workers' compensation program requires employers to compensate employees for injuries incurred by the employees in the course of their employment. (*Department of Rehabilitation v. Workers' Comp. Appeals Bd.* (2003) 30 Cal.4th 1281, 1288–1289 [135 Cal.Rptr.2d 665, 70 P.3d 1076].) The compensation mechanism consists, in part, of disability indemnity and vocational rehabilitation services. As part of the mechanism, there are payments for temporary disability, vocational rehabilitation temporary disability, vocational rehabilitation maintenance allowance, and permanent disability. (*Kopitske v. Workers' Comp. Appeals Bd.* (1999) 74 Cal.App.4th 623, 633 [88 Cal.Rptr.2d 216] (*Kopitske*).)

■ Temporary disability indemnity is intended to provide wage replacement to the injured worker during medical recovery. When the worker's medical condition becomes permanent and stationary, permanent disability may be payable to compensate the worker for impaired future earning capacity. If the worker cannot return to his or her usual and customary occupation due to the industrial injury, the worker is entitled to vocational rehabilitation services to assist in the return to the workforce in a different

position. A worker may receive vocational rehabilitation services while still temporarily disabled. That benefit is called vocational rehabilitation temporary disability (VRTD), to distinguish it from medical temporary disability. (*Webb v. Workers' Comp. Appeals Bd.* (1980) 28 Cal.3d 621, 626 [170 Cal.Rptr. 32, 620 P.2d 618] (*Webb*).) When the worker's medical condition becomes permanent and stationary, the worker may continue to receive vocational rehabilitation services, and the monetary benefit payable is VRMA.[9] At the worker's request, VRMA can be supplemented with permanent disability payments. (See *Gamble, supra*, 143 Cal.App.4th at pp. 80–82; § 139.5, subd. (d)(2).)

### B.  *VRMA*

█  Section 139.5, enacted in 1965, provided for vocational rehabilitation programs to restore injured workers to suitable gainful employment for maximum self-support. (*Webb, supra*, 28 Cal.3d 621.) As a result of legislation enacted in 2004, section 139.5 is now applicable only to injuries occurring before January 1, 2004 (§ 139.5, subd. (k)), and will remain in effect only until January 1, 2009, unless extended by subsequent legislation (§ 139.5, subd. (*l*)).[10] Although the Legislature has eliminated the workers' compensation vocational rehabilitation program, the Board has held that the repealed vocational rehabilitation statutes remain applicable to prior injuries. "[E]ven though these sections were repealed in 2003 and not reenacted in 2004, they still have a shadowy existence for injuries prior to January 1, 2004 . . . these statutes have no material existence but linger until their work is done." (*Godinez v. Buffets, Inc.* (2004) 69 Cal.Comp.Cases 1311, 1313, fn. omitted.)

█  A 1989 amendment to section 139.5 created the VRMA benefit, which is a benefit payable to those workers whose medical condition is permanent and stationary and who are participating in vocational rehabilitation services. (See *Ritchie v. Workers' Comp. Appeals Bd.* (1994) 24 Cal.App.4th 1174, 1182 [29 Cal.Rptr.2d 722] (*Ritchie*) ["VRMA provides an interim source of financial support to the employee who is enrolled in rehabilitation training and whose condition is permanent and stationary."].) Payments of VRMA are limited to an aggregate of 52 weeks, except when the overall "cap" (see § 139.5, subd. (a)(5); *Kim v. Workers' Comp. Appeals Bd.* (1999) 73 Cal.App.4th 1357, 1359–1360 [87 Cal.Rptr.2d 382]) of $16,000 on vocational rehabilitation services can be exceeded, such as when there is a delay of services or when the facts and the medical evidence would support a second vocational rehabilitation plan. (§ 139.5, subd. (c); former § 4642; former § 4644, subds. (d), (e).) The services under the $16,000 cap include

---

[9] VRMA is referred to as "maintenance allowance" in section 139.5, subdivision (c).

[10] See Statutes 2003, chapter 635; Statutes 2004, chapter 334.

expenses, counseling fees, training, maintenance allowance (VRMA), and costs. Temporary disability indemnity payments are not included within the cap if the worker chooses to participate in a plan before his medical condition becomes permanent and stationary. (§ 139.5, subd. (c).) Temporary disability indemnity and VRMA are not payable at the same time. (§ 139.5, subd. (d)(2).)

If the employer and employee disagree on the entitlement to benefits, either party may litigate the issue. Pending the final determination of the dispute, the worker is entitled to receive VRMA payments, and those payments are not to be counted against the maximum expenditures allowable for vocational rehabilitation services. (§ 139.5 subd. (d)(2); see Cal. Code. Regs., tit. 8, § 10125.3 [VRMA payable when worker "participating in eligibility evaluation"].)

## C. *Issue*

The issue in the instant case turns on the characterization of VRMA in the program of available benefits to the injured worker. The question is whether VRMA is merely one among the array of vocational rehabilitation services available to workers and thus not subject to a credit for wages, as decided in *Gamble, supra*, 143 Cal.App.4th 71, or, whether, as suggested by *Ritchie, supra*, 24 Cal.App.4th 1174, VRMA serves the same purpose as, and is a form of, temporary disability, and therefore would be a wage-loss benefit subject to a credit.

## D. *Gamble*

The court in *Gamble, supra*, 143 Cal.App.4th at page 90, held that VRMA was not a wage-loss benefit like temporary disability or VRTD, and, instead is one component of the array of vocational rehabilitation benefits. Thus, VRMA was not subject to credit for wages earned.

In *Gamble, supra*, 143 Cal.App.4th 71, the employee, Gamble, injured his back at his job as an air freight agent for United Airlines (United), where he had worked for 22 years. He had concurrent employment at a school district, where he had been employed for 27 years. The nature of his injury precluded him from working as an air freight agent, but he was able to continue working as a teacher and dean with a school district. The Rehabilitation Unit determined Gamble was a qualified injured worker and eligible to receive full vocational rehabilitation services, including VRMA. (*Id.* at p. 83.)

The issue of entitlement to benefits was litigated, and the WCJ agreed with the Rehabilitation Unit's determination. At trial, Gamble testified that he and his family were dependent on two incomes. The WCJ awarded Gamble

VRMA, and initially determined United was entitled to assert a credit against the VRMA benefits for the wages Gamble received from the school district on a wage-loss basis. (*Gamble, supra*, 143 Cal.App.4th at p. 85.)[11] Thereafter, the WCJ reversed his opinion and determined that United was not entitled to credit for wages earned at the secondary job for the school district and that to hold otherwise would penalize Gamble for working at a much less physically demanding job. (143 Cal.App.4th at p. 84.) United filed a Petition for Reconsideration. The Board granted the petition and held that Gamble was entitled to VRMA payments, but on a wage-loss basis—meaning that United was entitled to the credit for the wages Gamble earned against VRMA obligations. (*Id.* at p. 85.)

The sole issue in Gamble's petition for review to the Court of Appeal was the allowance of credit for wages against VRMA payable on a wage-loss basis. The parties in *Gamble, supra*, 143 Cal.App.4th at page 86, acknowledged that there was no explicit authority that provided that an employer may receive credit against VRMA when a worker continues to work at a second job. The court in *Gamble* said that the Legislature designated formulas to be applied when calculating various benefits, including VRMA, and a wage credit only applied in limited circumstances, involving temporary disability. (*Id.* at p. 86.)

The court reasoned that workers who are temporarily partially disabled can often work at a modified position, such as a job with fewer hours or in a lower paying position. Upon return to work, the employer is entitled to credit for the wages earned based on the wage-loss formula set forth in section 4657. The court determined that this formula also applied to VRTD, which is the benefit payable if the worker is able to participate in vocational rehabilitation services, but his medical condition is not permanent and stationary. (*Gamble, supra*, 143 Cal.App.4th at p. 90.) This view is consistent with two cases discussed in *Gamble* regarding the wage-loss credit against VRTD for earnings during entitlement to vocational rehabilitation services.

In one of the cases, *County Sanitation Dists. v. Workers' Comp. Appeals Bd. (Reyes)* (1995) 60 Cal.Comp.Cases 618, the Board determined the worker was not entitled to retroactive VRTD because he did not show a wage loss in that he had been working as a self-employed salesman at the time he requested vocational rehabilitation services. Thus, he did not satisfy the feasibility requirement since he was not available for services, and he had already returned to suitable gainful employment. (*Id.* at p. 620.) Ultimately,

---

[11] Section 4657 provides a wage-loss formula for calculating loss of wages of a worker who is temporarily partially disabled. Under this formula, employers are given credit for wages earned for fewer hours than regular work or at a lower paying job.

the worker was granted some VRTD during the evaluative period, but on a wage-loss basis, crediting the employer for wages earned. (*Ibid.*)

In *Douglas Oil Co. v. Workers' Comp. Appeals Bd.* (*Wiley*) (1982) 47 Cal.Comp.Cases 932, the other case, the worker was injured at his job as a truck driver, but continued to work selling insurance. While he was receiving temporary disability, he requested vocational rehabilitation services because he was not interested in working full time selling insurance. The benefit he requested was VRTD. The Board determined the worker was entitled to services, and the employer was entitled to credit for income earned on the new policies sold during his disability.

The court in *Gamble, supra,* 143 Cal.App.4th 71, distinguished these two cases by citing the different formulas used for calculating VRTD and VRMA. The court said that temporary disability indemnity and VRTD are subject to section 4657 wage-loss calculations. The court further stated that section 139.5, subdivision (d), which sets forth the amount allowable for payment of VRMA, does not reference a wage-loss credit, and therefore VRMA is not intended to replace lost earnings, but instead is merely "one of many components of the array of vocational rehabilitation services available to qualifying, permanent disabled workers." (143 Cal.App.4th at p. 90.) Furthermore, the court stated if the Legislature intended VRMA to be subject to a wage-loss formula, it could have used similar language to that in the wage-loss statute, section 4657. (143 Cal.App.4th at p. 90.)

### E. *Ritchie*

The discussion of the purpose of VRMA in *Gamble, supra,* 143 Cal.App.4th 71, is arguably inconsistent with the analysis of VRMA in *Ritchie, supra,* 24 Cal.App.4th 1174. The employee, Ritchie, was a city police officer who retired under Public Employees' Retirement System (PERS) industrial disability retirement and began receiving retirement benefits. At the same time, Ritchie also requested vocational rehabilitation services, including VRMA. Ritchie contended that he was entitled to receive both his PERS retirement pension and VRMA as long as he was participating in a vocational rehabilitation plan. Ritchie argued that VRTD and VRMA were different benefits, and although VRTD would terminate upon receipt of his retirement pension, VRMA would not. The Board found that liability for payment of VRMA terminated on the date of the officer's retirement.

The Court of Appeal in *Ritchie, supra,* 24 Cal.App.4th 1174, upheld the decision, holding that the Legislature did not intend to treat VRMA differently from VRTD for purposes of sections 4850 and 4853. (*Ritchie, supra,* 24 Cal.App.4th at p. 1185.) The court determined the purposes of VRTD and

VRMA were the same—to provide subsistence for the employee during participation in vocational rehabilitation; however, for a police officer, subsistence is provided by disability retirement payments benefits. (*Id.* at p. 1187.) Accordingly, like VRTD, VRMA terminates upon PERS disability retirement for those employees covered by sections 4850 and 4853. (*Ritchie, supra*, 24 Cal.App.4th at p. 1189.) *Ritchie* is distinguishable, however, as its analysis of section 139.5 benefits applies only to public employees subject to sections 4850 and 4853.[12] Two other cases disagree with *Ritchie* and conclude that VRMA is not analogous to temporary disability. (*Rucker v. Workers' Comp. Appeals Bd.* (2000) 82 Cal.App.4th 151, 159 [97 Cal.Rptr.2d 852] [VRMA is not temporary disability]; *Kopitske v. Workers' Comp. Appeals Bd., supra*, 74 Cal.App.4th at p. 633 [disagreeing with *Ritchie* to the extent that *Ritchie* finds that VRMA is a form of temporary disability and not a new benefit].)

### F. *No Credit*

We adopt the reasoning of *Gamble, supra*, 143 Cal.App.4th 71, in concluding that there should be no credit here. The court in *Webb, supra*, 28 Cal.3d at page 626, in a discussion of section 139.5, pointed out that the policy of the workers' compensation statutes and their constitutional foundation, as stated in numerous appellate decisions, " 'has been one of a pervasive and abiding solicitude for the workman.' " The principles enunciated in *Gamble, supra*, 143 Cal.App.4th 71, carry out that policy, and we believe they are applicable here.

The facts in this case demonstrate the merit in our application of the statute. The Rehabilitation Unit, the WCJ, and the Board determined that State Fund had not made a bona fide offer of vocational rehabilitation services. The offer of modified/alternative work did not comply adequately with former section 4644 in a number of respects. Thus, Medrano did not receive VRMA.

The award of retroactive VRMA covered, inter alia, the period of time spent in connection with the dispute over the entitlement to benefits. Pursuant to section 139.5, subdivision (d)(2), "[i]f the employer disputes the treating physician's determination of medical eligibility, the employee shall continue to receive that portion of the maintenance allowance [VRMA] payable under paragraph (1) pending final determination of the dispute." (See also Cal. Code Regs., tit. 8, § 10125.3.) Medrano was not receiving the disputed amounts. Thus, Medrano should not be penalized for obtaining work to provide himself with compensation under these circumstances. And State Fund should not be the

---

[12] Section 4850 sets forth guidelines for paid leave of absence for specified public employees. Section 4853 addresses instances when disability continues beyond one year.

beneficiary of the work Medrano undertook, because it was State Fund's denial of services that resulted in Medrano needing the work for compensation.

■ *Gamble, supra,* 143 Cal.App.4th 71, involved a worker who earned wages at a position that preexisted the injury and coexisted with the employment at which the worker was injured, while in the instant case, the worker earned wages at a position secured after the injury. In view of the nature of VRMA, this is a distinction without a difference. Most authorities do not view the establishment of VRMA as a form of temporary disability, but rather a benefit substantially different from temporary disability. Pursuant to section 139.5, VRMA is listed as one of an array of available vocational rehabilitation services. It is paid at an amount less than temporary disability, the time period for which VRMA can be paid is limited, it is limited with all other vocational rehabilitation services to $16,000, and temporary disability indemnity is excluded from the cap. (*Kopitske, supra,* 74 Cal.App.4th at p. 633.)

There is no sound reason why a worker should not be able to supplement his or her VRMA with permanent disability and wages, particularly because doing so generally is necessary for support for the worker and the worker's family. The worker's obligation is to complete a vocational rehabilitation plan. But, if it is found that the worker was not feasible to participate, or if he or she refuses to enter into a plan, VRMA benefits can be terminated, as specified in the order for benefits in the instant case. Employers or carriers have the responsibility of making vocational rehabilitation available to encourage workers to enroll by maintaining financial support to help defray the costs while they participate and thus facilitate the worker's reentry into the labor market as soon as possible. (*Webb, supra,* 28 Cal.3d at p. 628.) Providing the credit in the instant case is not consistent with the object of VRMA.

G. *Conclusion*

■ VRMA is not a wage replacement benefit, and thus it is not subject to wage-loss credit. There is no double recovery when, as here, a worker is awarded VRMA during the period of time he or she also has earnings, because VRMA is merely one of the array of benefits available for vocational rehabilitation services. Accordingly, the Board's decision should be and is annulled.

## DISPOSITION

The Board's decision is annulled, and the Workers' Compensation Board Judge's decision is reinstated.

Armstrong, Acting P. J., and Kriegler, J., concurred.